LINDA LEININGER, A MINOR, BY WILLIAM J. LEININGER, JR., AND ANOTHER, HER GUARDIANS, v. LAWRENCE G. SWADNER.

156 N. W. (2d) 254.

February 9, 1968—No. 41,148.

*Hvass, Weisman, King & Allen* and *Gary C. Hoffman,* for relators.
*Mahoney & Mahoney* and *John F. Angell,* for respondent.

PETERSON, JUSTICE.

Petitioners moved for an order in the Hennepin County District Court October 19, 1967, requiring the defendant to make available to petitioners one Robert G. Dunlop of Akron, Ohio, who was retained by defendant as an expert in the causes of damage to tires, for an evidentiary deposition, including his opinion and conclusions as an expert, to be used in connection with trial, or, in the alternative, to

produce Dunlop at the time of trial.[1] The Honorable Leslie L. Anderson denied the motion on the ground that the district court was without power to issue such an order because Rule 26.02, Rules of Civil Procedure, prohibits a party from taking the deposition of an expert witness employed by the adverse party, including compelling the expert to testify to his conclusions reached through his personal investigations.

The substantive issue presented, therefore, is whether the district court is under all circumstances precluded from making an order requiring the deposition of an adverse party's expert witness. A threshold issue, of course, is whether the extraordinary writ of mandamus is an appropriate remedy for reviewing this order.

The action to which the motion relates arose as a result of an automobile accident on June 30, 1964. Plaintiff minor, Linda Leininger, was a passenger in an automobile owned by the defendant, Lawrence G. Swadner, and driven by defendant's wife, Ann Swadner. The car driven by Mrs. Swadner collided with a car traveling in the opposite direction on State Highway No. 55, resulting in the injury of plaintiff and the death of Mrs. Swadner. Plaintiff's guardians brought the action against defendant on December 15, 1964, alleging that the accident was caused by the negligent operation of defendant's automobile. Defendant's answer denied negligence and, among other defenses asserted, has alleged "unavoidable accident."

The defense of unavoidable accident is based on the theory that it was caused by tire blowout.[2] A tire on defendant's car was allegedly observed to have been in a damaged condition after the accident. In an effort to determine whether the tire was damaged *prior* to impact, causing the car to go out of control, or whether the tire damage occurred in the impact itself, defendant, or someone acting in his behalf, sent the tire to Robert G. Dunlop, an expert in the causes of damage to tires.

---

[1] It appears that this alternative motion was made orally at the hearing.

[2] Pursuant to the Hennepin County District Court Rules, a pretrial conference was held May 10, 1967. Defendant filed a pretrial statement, part of which included a concise statement of the facts and stated: "The defendant alleges that the accident was a result of a blow out and that there was no negligence on the part of his deceased wife."

Judge Anderson denied plaintiff's motion and in his accompanying memorandum stated: "What is requested violates the last sentence of Rule 26.02[3] of the Rules of Civil Procedure."[4]

■ The Rules of Civil Procedure relevant to the determination of this issue are: Rules 26.02, 30.02, and 30.04. Rule 26.02 as it read at the time of the order places limits on the scope of discovery:

"Unless otherwise ordered by the court as provided by Rule 30.02 or 30.04, the witness may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. * * * The production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation or in preparation for trial, or of any writing that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, or, except as provided in Rule 35, the conclusions of an expert, shall not be required."

Rule 30.02 permits orders for the protection of parties and witnesses,[5]

---

[3] This reference to the last sentence of Rule 26.02 relates to the rule as it existed October 19, 1967, prior to the amendment effective February 1, 1968, which added another sentence (not relevant here) to the rule.

[4] Judge Anderson's memorandum also stated: "The motion papers do not limit the motion to be used for a regular trial deposition as to which the defendant could then set forth limitations which he feels should be required under the pertinent rule. By the language of the motion this could be a discovery deposition. No notice of the taking of the deposition has ever been served upon Robert G. Dunlop. The motion in effect simply asks the court for an opinion after which the plaintiffs may or may not choose to serve notice of taking of the deposition on him." Because of the importance of the issue and for the reasons that Judge Anderson plainly would have denied the motion in any event, we will not dispose of the application for the writ on these other grounds.

[5] Rule 30.02 provides: "After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court in

and Rule 30.04 permits orders to terminate or limit examination.[6]

It is a question of first impression in Minnesota whether the prohibition of Rule 26.02 against requiring disclosure of "the conclusions of an expert" (with the exception of medical experts as provided by Rule 35)[7] applies to the conclusions in general or only to the conclusions contained in writings.

---

which the action is pending may make an order that the deposition shall not be taken, or that it may be taken only at some designated time or place other than that stated in the notice, or that it may be taken only on written interrogatories, or that certain matters may not be inquired into, or that the scope of the examination shall be limited to certain matters, or that the examination shall be held with no one present except the parties to the action and their officers or counsel, or that the deposition be sealed and thereafter opened only by order of the court, or that secret processes, developments, or research need not be disclosed, or that the parties shall simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court; or the court may make any other order which justice requires to protect the party or witness from annoyance, expense, embarrassment or oppression. The power of the court under this rule shall be exercised with liberality toward the accomplishment of its purpose to protect parties and witnesses."

[6] Rule 30.04 provides: "At any time during the taking of the deposition, on motion of any party or of the witness and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the witness or party, the court in which the action is pending or the court in the district where the deposition is being taken may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in [Rule] 30.02. If the order made terminates the examination, it shall be resumed thereafter only upon the order of the court in which the action is pending. Upon demand of the objecting party or witness, the taking of the deposition shall be suspended for the time necessary to make a motion for an order. In granting or refusing such order, the court may impose upon either party or upon the witness the requirement to pay such costs or expenses as the court may deem reasonable."

[7] Rule 35.01 provides: "In an action in which the mental or physical condition or the blood relationship of a party, or of an agent of a party, or of a person under control of a party, is in controversy, the court in which the action is pending may order the party to submit to, or produce such agent or person for, a mental or physical or blood examination by a physician.

Decisions of other jurisdictions considering the question of whether the opposing side's expert is subject to discovery procedures are not uniform. In those jurisdictions which have not allowed the discovery and use of an adverse party's expert information, three grounds have primarily been relied upon: The attorney-client privilege; the work-product-of-an-attorney doctrine; and the so-called rule of unfairness.[8]

We do not think that the requested deposition is precluded on grounds of privilege. Rule 26.02 forbids the discovery of evidence which is privileged, but the privilege is referable to that granted by Minn. St. 595.02, clause (2) of which reads:

"An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given thereon in the course of professional duty; nor can any employee of such

---

The order may be made only on motion for good cause shown and upon notice to the party or person to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is made."

Rule 35.02 provides: "(1) If requested by the party against whom an order is made under Rule 35.01 or by the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings and conclusions, together with like reports of all earlier examinations of the same condition. After such request and delivery, the party causing the examination to be made shall be entitled, upon request, to receive from the party or person examined a like report of any examination, previously or thereafter made, of the same mental or physical or blood condition. If the party or person examined refuses to deliver such report, the court, on motion and notice, may make an order requiring delivery on such terms as are just, and, if a physician fails or refuses to make such a report, the court may exclude his testimony if offered at the trial.

"(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the adverse party waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him or the person under his control in respect of the same mental or physical or blood condition."

[8] See, Friedenthal, *Discovery and Use of an Adverse Party's Expert Information,* 14 Stanford L. Rev. 455.

attorney be examined as to such communication or advice, without the client's consent."

We do not consider an independent expert to be an employee. Even if Dunlop were arguably to be considered an employee of defendant's attorney, there has been no showing that he has been privy to confidential communications between the attorney and his client other than possibly as a necessary incident to defining the scope of the analysis to be made. This court held in Brown v. St. Paul City Ry. Co. 241 Minn. 15, 34, 62 N. W. (2d) 688, 701, that the question of whether a communication is privileged is a question of fact and that "[w]hen upon a discovery motion a party litigant claims privilege, the burden rests on him to present facts establishing the privilege." Whether any element of privilege might appear to exist is for this defendant to establish and, if established, it would be subject to appropriate protective order of the court.

We do think that work-product principles constitute some limitation upon the deposition which petitioners seek. The work product of an attorney is clearly distinguishable from privilege because, as stated in Rule 26.02, it refers to material prepared or acquired in anticipation of litigation. This court, again in Brown v. St. Paul City Ry. Co. *supra*, stated through Mr. Chief Justice Knutson (241 Minn. 35, 62 N. W. [2d] 701):

"* * * It must be kept in mind that there is a distinction between privileged communications protected from discovery under Rule 34[9] and those matters not necessarily privileged which are immune from discovery under Rule 26.02. When our rules were adopted, largely because of the

---

[9] Rule 34 provides: "Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30.02, the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26.02 and which are in his possession, custody, or control; or (2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property or any designated object or operation thereon within the

apprehension of members of the bar, the last sentence of Rule 26.02 was added to allay the fears of the bar that the privacy of the lawyer's file could be invaded. The immunity of the so-called 'work product of the lawyer,' which it was held could not be reached except where the court found good cause therefor in Hickman v. Taylor (3 Cir.) 153 F. (2d) 212, affirmed, 329 U. S. 495, 67 S. Ct. 385, 91 L. ed. 451, was made absolute in our rule. To that extent our rules differ from the federal rules."

It is clear from the plain language of Rule 26.02, however, that the prohibition against discovery of the work product of a lawyer is limited to "writings." Although the rule is not so plain as to "conclusions of an expert," we agree with Professor James L. Hetland, Jr., that a reasonable interpretation of the prohibition of Rule 26.02 is likewise consistently limited to conclusions of an expert *in writing*.[10] We observe, at the same time, that the prohibition exists only as to such written "conclusions" and not to the underlying facts which form the basis for the expert's conclusions. The prohibition of our rules against discovery of the written conclusions of an expert, we emphasize, is clear and inviolate, irrespective of Federal practice and irrespective of whether the disclosure is by a discovery deposition or, as requested in petitioners' motion, an evidentiary deposition.

Probably the strongest argument for not permitting the discovery of an adverse party's expert's *nonwritten* conclusions is that of unfairness. The expert witness, unlike such other witnesses as the ordinary eyewitness, has no unique knowledge, so that the other side ordinarily can obtain the same kind of evidence by hiring its own expert. Ordinarily, therefore, where other competent experts are available or where there is no showing of change of condition preventing another expert selected by the adversary himself from making the same examination the opposing expert did, the conclusions of the adverse party's expert, even though non-

---

scope of the examination permitted by Rule 26.02. The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."

[10] 2 Youngquist & Blacik, Minnesota Rules Practice, Hetland, Interpretive Commentaries, 1965 pocket part, p. 8.

written, should not be subject to discovery.[11] We conclude, otherwise, that the rationale of Hickman v. Taylor, 329 U. S. 495, 67 S. Ct. 385, 91 L. ed. 451, relating to practice in the Federal courts and undertaking to strike a balance between protecting the work product of an attorney and the public policy interest in allowing reasonable and necessary inquiries into factual matters, should be applied in Minnesota to give the trial court discretion to permit discovery of the nonwritten conclusions of an adverse party's expert when, but only when, good cause is shown. Where such evidence is indispensable to a determination of a material issue and would be otherwise unavailable, considerations of fairness to one litigant are overbalanced by considerations of fairness to society as a whole in achieving ultimate justice.

The Hickman case arose from the sinking of a tugboat in which five of the tug's nine crewmen lost their lives. A public hearing was held shortly after the accident at which the four survivors testified, and their testimony was made available to all interested parties. Subsequently, the lawyer for the tug's owners interviewed the survivors and obtained signed statements from them. A lawsuit was commenced against the owners and interrogatories were served upon them. The owners refused to answer the interrogatory which requested a copy of written statements of the survivors and a report detailing any oral statements. The United States Supreme Court held that plaintiff's stated reason for seeking production of the statements, which was to help prepare himself to examine witnesses and to make sure that he had overlooked nothing, was insufficient for the discovery sought. The United States Supreme Court stated in Hickman, however:

"We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily

---

[11] Plaintiff's motion included the tender to Mr. Dunlop of a reasonable expert witness fee, which would at least partially answer an objection based upon the expert's property interest in his own opinion, but that alone does not completely cure the element of unfairness. Plaintiff has not yet shown why he must have the testimony of the expert engaged by defendants. There has as yet been no showing that other experts are not available and, as we are affirmatively advised by counsel, the tire to be investigated has not been changed in any way and is available for plaintiff's independent examination.

free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty." 329 U. S. 511, 67 S. Ct. 394, 91 L. ed. 462.

The United States Supreme Court places the burden of establishing adequate reasons to justify production on the party seeking discovery of the lawyer's work product. We hold that Hickman v. Taylor, *supra,* (except to the extent it conflicts with the clearly expressed policy of our own court) is persuasively applicable to compel the discovery of an adverse party's expert's nonwritten conclusions provided that a substantial showing of good cause is made by the applicant.

■ There is some question whether mandamus is a proper remedy for obtaining the relief sought by plaintiffs. Defendant contends that Judge Anderson's denial of plaintiff's motion involved no abuse of discretion and that plaintiff has an adequate remedy at law inasmuch as the ordinary method of appeal is adequate. The trial court did not abuse its discretion but, rather, declined to exercise a discretion which we now hold it does have. We have held that extraordinary remedies will be granted in unusual cases "where it will settle a rule of practice affecting all litigants" or where it appears that the action of the court "relates to a matter that is decisive of the case." Thermorama, Inc. v. Shiller, 271 Minn. 79, 84, 135 N. W. (2d) 43, 46. We think that a resolution of this issue by mandamus is appropriate in view of its apparent importance to the litigants and to the bench and bar as a whole.

We do not direct issuance of the order for which petitioners moved, but remand the matter to the district court for such further proceedings it deems appropriate and not inconsistent with this opinion.

Remanded.