BIETER COMPANY, Plaintiff,

v.

Beatta BLOMQUIST; Federal Land Company; Eagan Tower Office Building Partnership; Eagan Heights Commercial Park; Advance Developers, Inc.; Cliff Road Properties; Hoffman Development Group, Inc.; HDG Associates Limited Partnership; Eagan Associates Limited Partnership; CRP of Eagan, Inc.; Robert L. Hoffman; Patrick C. Hoffman; and Jack F. Daly, Jr., Defendants.

CLIFF ROAD PROPERTIES; Hoffman Development Group, Inc.; Advance Developers, Inc.; HDG Associates Limited Partnership; Eagan Associates Limited Partnership; CRP of Eagan, Inc.; Robert L. Hoffman; Patrick C. Hoffman; and Jack F. Daly, Jr., Third–Party Plaintiffs,

v.

DORSEY & WHITNEY, a Minnesota partnership; and Ryan Construction Company of Minnesota, Inc., a Minnesota corporation, Third–Party Defendants.

No. 3–89 CIV759.

United States District Court,
D. Minnesota,
Third Division.

May 27, 1994.

R. Walter Bachman, Jr., Lindquist & Vennum, Joseph J. Christensen, Snelling, Christensen & Briant, Minneapolis, MN, for Bieter Co.

Thomas G. Barry, Jr., Paula A. Callies, Hoff, Barry & Kuderer, Eden Prairie, MN, for Beatta Blomquist.

Robert C. Bell, Peterson, Bell, Converse & Jensen, Minneapolis, MN, for Federal Land Co.

Gary G. Fuchs, Campbell, Knutson, Scott & Fuchs, Eagan, MN, for Eagan Tower Office Bldg. Partnership, Eagan Heights Commercial Bank.

Paul Michael Floyd, Norman J. Baer, Joseph W. Anthony, Fruth & Anthony, Minneapolis, MN, for Advance Developers, Inc., Cliff Road Properties, Hoffman Development Group.

Floyd Abrams, Cahill, Gordon & Reindel, New York City, for HDG Associates Ltd. Partnership, Eagan Associates Ltd. Partnership, CRP of Eagan, Inc., Robert L. Hoffman, Patrick C. Hoffman, Jack F. Daly, Jr.

Gerald L. Svoboda, Richard G. Jensen, Fabyanske, Svoboda, Westra, Davis & Hart, Minneapolis, MN, for Dorsey & Whitney.

Thomas S. Fraser, Todd A. Wind, Fredrikson & Byron, Minneapolis, MN, for Ryan Const. Co.

ALSOP, Senior District Judge.

This matter comes before the Court upon Defendant Blomquist and Third–Party Defendant Dorsey & Whitney's appeal from the magistrate judge's December 22, 1993 order. Blomquist appeals that portion of the order compelling Blomquist to produce all financial documents and tax returns of Video Hollywood Style of Eagan, Inc. and denying Blomquist's request for a protective order for her personal tax returns and related financial records. Dorsey & Whitney ("Dorsey") appeals that portion of the order denying Dorsey's Motion to Compel the third-party plaintiffs to remove their privileged designation and to produce documents. Dorsey claims these documents are necessary to defend against the Cliff Road Defendants' third-party legal malpractice claim. The Cliff Road

Defendants[1] claim that the documents are protected by the attorney-client privilege and/or work product immunity.

## I. *BLOMQUIST'S MOTION*

The magistrate judge's order is nondispositive and will not be overturned unless it is found to be clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); D.Minn. L.R. 72.1(b). The Court does not find that the magistrate judge's order, as it relates to Blomquist, is clearly erroneous or contrary to law. *Id.* Accordingly, the magistrate judge's order will be affirmed as it relates to Blomquist and Blomquist's motion will be denied.

## II. *DORSEY & WHITNEY'S MOTION*

### A. *Procedural Background*

Dorsey's Motion to Compel has a protracted history. In March 1991, Dorsey first moved to compel production of the documents currently at issue before this Court. Dorsey argued that the Cliff Road Defendants waived their attorney-client privilege with Larkin, Hoffman, Daly & Lindgren ("Larkin") by suing Dorsey for legal malpractice and that Dorsey had demonstrated substantial need for the documents so as to overcome the Cliff Road Defendants' work product privilege.[2] The magistrate judge denied that motion in an order dated April 24, 1991. *See Bieter v. Blomquist*, 3–89 CIV 759, slip op. at 1 (April 24, 1991) ("April 24, 1991 Order.")

Dorsey subsequently appealed the magistrate judge's order to this Court. The Court ordered Dorsey to designate the documents necessary to Dorsey's defense and also ordered the Cliff Road Defendants to submit those documents to the Court for an *in camera* review. Dorsey was in the process of designating the documents to be provided to the Court for an *in camera* review when this Court granted the Cliff Road Defendants'

motion for summary judgment against Bieter Company. *See Bieter v. Blomquist*, 784 F.Supp. 1405 (1992). As a result, Dorsey's appeal of the magistrate's order was rendered moot and the documents were not submitted to the Court for review.

The Eighth Circuit subsequently reversed this Court's grant of summary judgment. *See Bieter v. Blomquist*, 987 F.2d 1319 (8th Cir.1993). Rather than submitting the documents to this Court for review, the documents were submitted to the magistrate judge for an *in camera* review and Dorsey renewed its Motion to Compel production of the documents. The magistrate judge denied Dorsey's Motion to Compel by order dated December 22, 1993. *See Bieter v. Blomquist*, 3–89 CIV 759, slip op. at 1 (Dec. 22, 1993) ("Dec. 22, 1993 Order"). Dorsey now appeals the magistrate judge's December 22, 1993 order and submits the documents to this Court for an *in camera* review.

This Court granted Dorsey's Motion for Summary Judgment on count one of the third-party complaint in *Bieter*, which was the third-party plaintiffs' malpractice claim, without prejudice, on March 29, 1994. *See Bieter v. Blomquist*, 848 F.Supp. 1446, 1451–1452 (1994). The Court held that the third-party plaintiffs' action against Dorsey was not dependent upon the main action in *Bieter*. The Court noted that the third-party plaintiffs, who are the plaintiffs in *Cliff Road Properties v. Cornwell*, No. 3–93 CIV 399, slip op. at 11 (March 29, 1994), had already brought a virtually identical malpractice claim against Dorsey in that related case. Because of the malpractice claim against Dorsey in the *Cliff Road* action, Dorsey's motion in the *Bieter* action is not moot.

### B. *Attorney–Client Privilege*

Dorsey and the Cliff Road Defendants apparently agree that the documents in question are subject to the attorney-client privi-

---

**1.** The Court will refer to Cliff Road Properties, Hoffman Development Group, Inc., Advance Developers, Inc., HDG Associates Limited Partnership, Eagan Associates Limited Partnership, CRP of Eagan, Inc., Robert L. Hoffman, Patrick C. Hoffman, and Jack F. Daly, Jr., as the "Cliff Road Defendants" or "Third–Party Plaintiffs."

**2.** Dorsey has claimed that the third-party plaintiffs waived their attorney-client privilege with Larkin by suing Dorsey for malpractice because Larkin represented the third-party plaintiffs in the same transaction giving rise to their malpractice claim against Dorsey.

lege, but disagree as to whether the privilege has been waived.[3] The documents Dorsey seeks were generated by Larkin in the course of Larkin's representation of the Cliff Road Defendants. The Cliff Road Defendants acknowledge that they waived their attorney-client privilege with Dorsey when they brought a third-party claim against Dorsey for malpractice, but argue that bringing the claim against Dorsey did not also result in waiver of their privilege with Larkin. Dorsey disagrees and contends that "at the same time Dorsey was supposedly committing this legal malpractice, the [Cliff Road Defendants'] actual counsel, Larkin, was actively representing the [Cliff Road Defendants] on precisely the same matters." (Dorsey's Mem. in Supp. of Appeal from Mag. Order at 2) As a result, Dorsey contends that the Cliff Road Defendants waived their attorney-client privilege with Larkin to the extent that Larkin participated in the events giving rise to the malpractice claim against Dorsey.

 The federal common law of attorney-client privilege applies to this action. *In Re Bieter Company,* 16 F.3d 929, 935 (8th Cir.1994). The attorney-client privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client." *Id.,* 16 F.3d at 937 (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981)). In determining whether there has been an implied waiver, two elements must be examined: 1) implied intention; and 2) fairness and consistency. *Sedco Int'l, S.A. v. Cory,* 683 F.2d 1201, 1206 (8th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). Courts have found, and the parties do not dispute, that the attorney-client privilege is waived when a client sues his or her attorney for malpractice. *See id.,* 683 F.2d at 1206.

 The facts of this malpractice action are slightly different, however, than the traditional malpractice scenario in which the issue of waiver of the attorney-client privilege arises. In the instant case, the issue is whether the waiver extends to documents generated by a non-party attorney who represented the client in the same transaction giving rise to the malpractice claim against the attorney named as a defendant. The Court is unaware of any cases within the Eighth Circuit that have addressed this specific issue.

Dorsey encourages the Court to follow *Pappas v. Holloway,* 114 Wash.2d 198, 787 P.2d 30 (1990). In *Pappas,* different attorneys represented the clients at various stages of the litigation. The court in *Pappas* found that clients who sued one of their attorneys for malpractice waived the attorney-client privilege with respect to *all* attorneys who represented them in the underlying litigation. The court reasoned that the clients could not "counterclaim against [one attorney] for malpractice and at the same time conceal from him communications which have a direct bearing on this issue simply because the attorney-client privilege protects them." *Pappas,* 787 P.2d at 36. Therefore, "the record [supported] an implied waiver of the attorney-client privilege as to all the attorneys who were involved in defending the Holloways in the underlying litigation." *Id.*

The magistrate judge rejected *Pappas* in denying Dorsey's Motion to Compel. *See Pappas,* 787 P.2d at 30. He found "the court's rationale in *Pappas* to be unpersuasive, as well as inapplicable to the matter at issue in this case." (April 24, 1991 Order at 5.) Specifically, the magistrate judge reasoned:

Dorsey has not asserted a third party claim against Larkin, has not claimed that it jointly represented [the Cliff Road Defendants] with Larkin with respect to the development of the Cliff Lake Centre, and has not asserted that its representation ever overlapped with that of Larkin with respect to the development of the Cliff Lake Centre. In fact, Dorsey has consistently maintained that it never represented [the Cliff Road Defendants] on any matter at any time.

*Id.*

Furthermore, the magistrate judge found that the documents at issue were not "vital"

---

**3.** As did the magistrate judge, this Court will assume that the attorney-client privilege applies

to the documents sought for purposes of this motion.

to Dorsey's defense. He reasoned that because "Larkin never represented Bieter, nor turned over confidential files to Bieter, nor sued any of the third-party plaintiffs," the documents sought were unrelated to the Cliff Road Defendants' malpractice claim against Dorsey.[4] (Dec. 22, 1993 Order at 3–4.) In addition, the magistrate judge noted that "[t]hree of the five documents relate to work performed by Larkin in 1988. However, Target acted in 1987, including: publicly announcing its intention to locate at [Cliff Lake Centre], writing to Bieter that it was no longer interested in [that site]; and executing a purchase agreement."[5] (*Id.* at 3.)

After reviewing the five documents *in camera*, the magistrate judge held that "[t]o find that [the Cliff Road Defendants] impliedly waived their privilege with respect to Larkin by suing Dorsey in this matter would unduly burden the attorney client relationship between [the Cliff Road Defendants] and Larkin." (Apr. 24, 1991 Order at 5.) Accordingly, the magistrate judge denied Dorsey's Motion to Compel.

One of the reasons for the magistrate judge's rejection of *Pappas* as inapplicable is that Dorsey has not asserted a claim against Larkin, whereas the attorneys from whom documents were sought in *Pappas* had been joined as parties. (April 24, 1991 Order at 5.) The Court does not find this factor to be determinative of whether the waiver should extend to Larkin. The documents are highly relevant to Dorsey's defense of the malpractice claim, regardless of whether Dorsey has asserted a claim against Larkin. Another reason for the magistrate judge's rejection of *Pappas* was Dorsey's repeated denial of the existence of an attorney-client relationship

between Dorsey and the third-party plaintiffs. The Court finds this factor inapposite. It is logically consistent for Dorsey to deny the existence of an attorney-client relationship, yet argue that if such a relationship existed, Larkin was also actively engaged in representing the third-party plaintiffs in the same events underlying the malpractice claim.[6]

Citing *Connell v. Bernstein–Macaulay, Inc.,* 407 F.Supp. 420, 422–23 (S.D.N.Y.1976), the magistrate stated that waiver occurs only where application of the privilege would deny the malpractice defendant access to information "vital" to his defense.[7] (April 24, 1991 Order at 4.) *See Sedco,* 683 F.2d at 1206; *Pappas,* 787 P.2d at 36; *Hearn v. Rhay,* 68 F.R.D. 574, 581 (D.Wash.1975) (created the test set forth in *Connell*). The magistrate judge then found that the information sought by Dorsey was not "vital" for the reasons previously stated in this Order. The Court is not aware of any Eighth Circuit cases that have adopted the *Hearn* test, which only permits waiver in malpractice cases if application of the privilege would deprive the adversary of vital information. Whether the information sought is vital seems especially relevant in a case such as this, however, where a party seeks to expand the attorney-client privilege beyond the traditional malpractice scenario. Accordingly, the Court agrees with the magistrate judge that the waiver should extend to Larkin only if Dorsey shows that the information is vital to its defense. Indeed, the primary reason for extending the waiver here is that the documents are necessary for Dorsey's defense of the malpractice claim. *Sedco,* 683 F.2d at 1206.

---

**4.** At one time, Dorsey represented Bieter in this action.

**5.** The judge made this observation in determining why the documents are not "substantially necessary" to justify waiver of the work product doctrine. However, the judge noted, and the Court agrees, that this analysis is also relevant to determine whether the third-party plaintiffs have waived their attorney-client privilege with Larkin by suing Dorsey.

**6.** It is undisputed that Dorsey represented Bieter, but Dorsey has consistently denied ever repre-

senting the third-party plaintiffs in events giving rise to this litigation.

**7.** In *Connell,* the court adopted a rule that, where the following three conditions exist, waiver of the attorney-client privilege should be found: 1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; 2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and 3) application of the privilege would have denied the opposing party access to information vital to its defense. *Connell,* 407 F.Supp. at 422–23.

To determine the relevancy of the documents sought, it is necessary to first examine the third-party plaintiffs' legal malpractice claim. It is premised in part upon the following: 1) Dorsey engaged in a conflict of interest by simultaneously representing the third-party plaintiffs and Bieter in their respective attempts to develop shopping centers in the city of Eagan; 2) Dorsey failed to advise them of their potential liability to Bieter; 3) Dorsey performed the alleged wrongful acts with respect to the Target transaction for which Bieter has asserted claims against them;[8] and 4) Dorsey did not include in the agreement between Target and the Cliff Road Defendants a warranty that Target could legally enter the transaction.

Dorsey contends that the documents it seeks directly controvert those allegations. Specifically, Dorsey contends that the documents establish that: 1) Any representations to Target and the City of Eagan regarding the status of Bieter's zoning were made by, or on the advice of, Larkin, not Dorsey; 2) Larkin and the third-party plaintiffs had direct contact with Target; and 3) Larkin and the third-party plaintiffs were aware of the third-party plaintiffs' potential liability to Bieter because Larkin participated in the meetings with the third-party plaintiffs at which Larkin and the third-party plaintiffs discussed taking actions upon which Bieter bases its claim and because Larkin advised the third-party plaintiffs with respect to Bieter's allegations regarding Target. (Dorsey's Mem. in Supp. of Appeal from Mag. Order at 6–7.)

The Court finds that the magistrate judge too narrowly construed the nature of the third-party malpractice claim against Dorsey in determining that the documents generated by Larkin are unrelated to that claim. As the magistrate judge noted, it is true that Larkin did not engage in all of the conduct upon which the third-party legal malpractice claim against Dorsey is based. Dorsey, but not Larkin, is accused of "[turning] over all of the development partnerships' confidential files to Bieter's attorneys and eventually [su-

ing] the Cliff Road Defendants/third-party plaintiffs." (Dec. 22, 1993 Order at 3.) Unlike Dorsey, "Larkin never represented Bieter, nor turned over confidential files to Bieter, nor sued any of the third-party plaintiffs." (*Id.* at 3–4.)

If the third-party malpractice claim was limited to the foregoing allegations against Dorsey, then the Court "would agree that the malpractice claim is independent of Larkin's representation of the [third-party plaintiffs.]" (Dorsey's Mem. in Supp. of Appeal from the Mag. Order at 7.) However, as discussed above, the third-party malpractice claim is based, in large part, on allegations that Dorsey committed the alleged wrongful acts that caused Bieter to sue the Cliff Road Defendants and that Dorsey failed to warn them of their potential liability to Bieter. After an *in camera* review of the documents, the Court agrees with Dorsey that several of the documents that Dorsey seeks are highly relevant to those allegations.

The magistrate judge found that the documents are not vital to Dorsey's defense because three out of the five documents were generated in 1988, after the Cliff Road Defendants entered into a purchase agreement with Target. The third-party plaintiffs contend that any documents generated after the December 1987 purchase agreement are not relevant to Dorsey's defense. After an *in camera* review, the Court finds that only one document is dated 1988. While the Court agrees that the March 18, 1988 document is not relevant, much less necessary, to Dorsey's defense, the Court finds that the other four are critical. The March 18, 1988 document is not relevant because it does not tend to show that Larkin, not Dorsey, committed the alleged wrongful acts that caused Bieter to sue the Cliff Road Defendants or that Larkin failed to warn them of their potential liability to Bieter. The 1988 document was generated *after* the events that would support either of these allegations would have taken place. The Court will not compel production of the March 18, 1988 document.

---

8. The wrongful acts consist of allegedly luring Target away from Bieter's proposed development, including alleged misrepresentations to Target and the City of Eagan regarding the status of Bieter's rezoning.

Because it would be unfair and highly prejudicial to permit the third-party plaintiffs to sue Dorsey for malpractice, yet simultaneously conceal documents which have a direct bearing on Dorsey's alleged malpractice, the Court finds that the third-party plaintiffs have waived their attorney-client privilege with Larkin as to the documents at issue, except for the March 18, 1988 document. This conclusion is consistent with the policy underlying the attorney-client privilege because, as the court noted in *Pappas*, 787 P.2d at 36, to reach a different conclusion would enable the third-party plaintiffs to use the attorney-client privilege as a "sword" rather than as a "shield." The Court holds that the Cliff Road Defendants' waiver extends to Larkin because it would be "manifest injustice to allow the client to take advantage of the rule of privileges to the prejudice of the attorney," and because the privilege "would be carried to the extent of depriving the attorney of the means of obtaining or defending his own rights." *Pappas*, 787 P.2d at 34. *See Sedco*, 683 F.2d at 1206.

## C. *Work Product Doctrine*

■ The work product doctrine protects all documents and tangible things prepared in anticipation of litigation or trial. Fed. R.Civ.P. 26(b)(3). The doctrine was designed to prevent " 'unwarranted inquiries into the files and mental impressions of an attorney' " and "recognizes that it is 'essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.' " *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir.) (quoting *Hickman v. Taylor*, 329 U.S. 495, 67

S.Ct. 385, 91 L.Ed. 451 (1947)), *cert. denied*, 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). The work product doctrine is broader than the attorney-client privilege. *In re Murphy*, 560 F.2d 326, 337 (8th Cir.1977). If the information is not prepared in "anticipation of litigation or trial," it is not subject to work product immunity. *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603–04 (8th Cir.1978).

■ There are two types of protected work product. "Ordinary" work product is subject to production only upon a showing of substantial need and inability to secure the substantial equivalent without undue hardship. *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir.1988).[9] The magistrate judge applied the "substantial need" test in holding that the documents were not discoverable.[10] *See Shelton v. American Motors Corp.*, 805 F.2d 1323, 1328 (8th Cir.1986); *In re Murphy*, 560 F.2d at 336; (Dec. 22, 1993 Order at 4.) "Opinion" work product includes documents that contain the mental impressions, conclusions or opinions of an attorney and is discoverable only in "rare and extraordinary circumstances."[11] *In re Chrysler Motors Corp.*, 860 F.2d at 846; *Simon*, 816 F.2d at 402 n. 3 (quoting *In re Murphy*, 560 F.2d 326, 336 n. 20 (8th Cir.1977)). Opinion work product is virtually absolutely immune from discovery.[12] *In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir.1973).

■ Two of the documents Dorsey seeks contain handwritten notes and attorney impressions and would qualify as "opinion" work product, were it clear that they were, in

---

**9.** Rule 26(b)(3) provides that documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" may be obtained in discovery "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case."

**10.** The judge assumed that the documents were prepared in anticipation of litigation and that the work product doctrine applied.

**11.** Fed.R.Civ.P. 26(b)(3) requires that "the court shall protect against disclosure of the mental

impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

**12.** Courts disagree as to the amount of protection afforded opinion work product under rule 26(b)(3). Some courts require little justification to compel discovery, some have held that opinion work product is absolutely immune from discovery, and yet others have held that where the material sought is central to a party's claim or defense, an exception to the strict rule created by Rule 26(b)(3) should apply and discovery should be allowed. *See Pappas*, 787 P.2d at 38.

fact, prepared in anticipation of litigation.[13] Whether documents were prepared in anticipation of litigation is a factual determination:

> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Simon,* 816 F.2d at 401 (quoting 8 C. Wright & Miller, *Federal Practice and Procedure* § 2024, at 198–99 (2970)). As the magistrate judge noted, "[t]here appears to be no dispute that Larkin ... was primarily responsible for the representation of [the Cliff Road Defendants] in connection with the development of Cliff Lake Centre." (April 24, 1991 Order at 3.) The handwritten notes relate to the Cliff Road Defendants' acquisition of Target and reflect Larkin's role in furthering the development of Cliff Lake Centre. The documents were not prepared in anticipation of litigation. They are therefore subject to discovery.

■ The remainder of the documents are billing statements generated during the course of Larkin's representation of the Cliff Road Defendants.[14] Materials assembled "in the ordinary course of business ... or for nonlitigation purposes are not [protected by work product qualified immunity]." *Simon,* 816 F.2d at 401 (quoting 8 C. Wright & Miller, *Federal Practice and Procedure* § 2024, at 198–99 (1970)). The Court finds that these documents were generated in the ordinary course of business and not in preparation for litigation. *See Rayman v. American Charter Fed. Sav. & Loan Ass'n,* 148 F.R.D. 647, 660 (D.Neb.1993) (attorney billing statements not subject to work product

protection); *Pandick, Inc. v. Rooney,* No. 85 C 6779, 1988 WL 61180, slip op. at 1 (N.D.Ill. 1988) (same). Nor were the descriptions of services performed contained within the billing statements prepared in anticipation of litigation.[15] *See Simon,* 816 F.2d at 401. The descriptions merely identify services performed in connection with the Cliff Road Defendant's acquisition of Target. The Court finds, therefore, that the two billing statements generated in 1987 and the descriptions therein are subject to discovery.

### D. *Conclusion*

The Court finds that the magistrate judge's order is clearly erroneous and contrary to law as it relates to Dorsey's Motion to Compel production of Documents for the reasons stated herein. *See* 28 U.S.C. § 636(b)(1)(A); D.Minn.L.R. 72.1(b). The Court will therefore reverse the magistrate judge's denial of Dorsey's Motion to Compel and grant Dorsey's Motion to Compel.

Accordingly, upon review of the files, records, and proceedings herein, including review of the five documents submitted for an *in camera* review.

IT IS ORDERED That:

1. The magistrate judge's December 22, 1993 Order, insofar as it compels Blomquist to produce all financial documents and tax returns of Video Hollywood Style of Eagan, Inc. and denies Blomquist's request for a protective order for her personal tax returns and related financial records, is **AFFIRMED;**

2. To the extent that the Order denies Dorsey's Motion to Compel production of the documents submitted to the Court for an *in camera* review, other than the March 18, 1988 document, the Order is **REVERSED** and the Cliff Road Defendants/Third–Party Plaintiffs shall produce those documents to Dorsey;

---

**13.** The documents are dated approximately January 1987.

**14.** The Court will address the billing statements dated September 11, 1987 and October 13, 1987, but not the one dated March 18, 1988, given its finding that the 1988 document is not relevant to Dorsey's defense.

**15.** The descriptions would arguably constitute opinion work product if they had been prepared in anticipation of litigation, because the descriptions are essentially attorney notes.

3. To the extent that the Order denies Dorsey's Motion to Compel production of the March 18, 1988 document, the Order is **AFFIRMED;** and

4. The Order herein is stayed for ten days following the filing of this Order.