CITY PAGES, a publication of City Pages Media, Inc., et al., Appellants,

v.

STATE of Minnesota, et al., Defendants,

Blue Cross and Blue Shield of Minnesota, Respondent.

No. C2–02–1191.

Court of Appeals of Minnesota.

Jan. 28, 2003.

Mark R. Anfinson, Minneapolis, MN, for appellants.

Eric J. Magnuson, Karen A. Janisch, Diane B. Bratvold, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, MN, for respondent Blue Cross and Blue Shield of Minnesota.

Mike Hatch, Attorney General, Alan I. Gilbert, Chief Deputy and Solicitor General, John S. Garry, Assistant Attorney General, St. Paul, MN, for amicus State of Minnesota.

Considered and decided by KLAPHAKE, Presiding Judge, KALITOWSKI, Judge, and FORSBERG, Judge.

## OPINION

FORSBERG, Judge.*

Appellants, a newspaper and its editor, brought this action against the state to obtain the billing records of a law firm's work done jointly for the state and respondent Blue Cross and Blue Shield of Minnesota (BCBS). BCBS intervened and moved for summary judgment. The district court, after reviewing sample billing records in camera, granted the summary judgment on the ground that the attorney-client privilege protected the billing records in their entirety. Appellants challenged the grant of summary judgment. This court dismissed the appeal as premature because the summary judgment did not dispose of appellants' claim against the state. The district court then granted the state summary judgment sua sponte. Appellants challenge the summary judgment granted to BCBS.[1]

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Both BCBS and the state filed briefs. Respondent BCBS moved this court to strike the state's brief and to exclude the state from oral argument. The state waived oral argument

## FACTS[2]

The law firm of Robins, Kaplan, Miller & Ciresi (RKMC) represented both BCBS and the State of Minnesota in the 1994–1998 tobacco litigation. A special attorney agreement between the state and RKMC provided that RKMC would receive 25% of whatever the state recovered, but also required RKMC to furnish monthly bills detailing its activities and charges. A joint prosecution and confidentiality agreement entered into by RKMC, the state, and BCBS provided that both clients were entitled to communicate separately and confidentially with RKMC. RKMC prepared three sets of bills related to the case: one set for work done only for the state; one set for work done only for BCBS; and one set for work done jointly for the state and BCBS.

After the tobacco litigation had been settled, appellants, City Pages newspaper and its editor, Tom Finkel, asked the state for permission to review the billing records of the work done jointly for it and BCBS, asserting that these records were publicly accessible pursuant to the Minnesota Government Data Practices Act, Minn.Stat. ch. 13 (2000). The state refused, stating that the billing records had been returned to RKMC. They were later returned to the state. Appellants then sued the state to obtain release of the billing records. BCBS intervened; it opposed the release of the billing records on two grounds, arguing first that they were not government data and, in the alternative, that both the attorney-client privilege and the work-product doctrine precluded their release.

The district court, after hearing arguments and examining samples of billing records in camera, found that the attorney-client privilege protected the billing records in their entirety and declined to address whether they were government data and whether the work-product doctrine protected them.[3]

## ISSUES

1. Are a law firm's billing records of work done jointly for the state and another client accessible by the public pursuant to the Minnesota Government Data Practices Act?

2. Does the attorney-client privilege protect in their entirety a law firm's billing records of work done jointly for the state and another client?

3. Does the work-product doctrine protect in their entirety a law firm's billing records of work done jointly for the state and another client?

4. When a law firm's billing records are government data, must a party opposing making parts of the records accessible by the public identify for the court's in

---

but opposed the motion to strike its brief; appellants filed a letter concurring with the state's position. This court issued an order holding that the state is not an adverse party to the appeal and therefore not a respondent, but accepting its brief as an amicus curiae brief.

2. The parties agree that the facts are not disputed.

3. The billing records for April 1997 and September 1997 were submitted as samples to the district court. This court has also examined them in camera. They contain: (1) dates; (2) names of timekeepers; (3) numbers of hours worked; (4) generic descriptions of activities, e.g., review files, update database, prepare for deposition, search and retrieve files, research on summary judgment motion; (5) occasional references to legal theories that were the subject of research; (6) occasional references to the source of documents being reviewed; and (7) total fees and disbursements for the month. The billing records carry no stamped or written indication that they are work product or protected by the attorney-client privilege.

camera review those portions of the records that the party alleges are protected by the attorney-client privilege or the work-product doctrine?

## ANALYSIS

On appeal from a summary judgment where there are no genuine issues of material fact, our review is limited to determining whether the district court erred in its application of the law. We review de novo whether the district court erred in its application of the law. *Prior Lake Am. v. Mader,* 642 N.W.2d 729, 735 (Minn.2002) (citations omitted). The issues raised by this appeal are all questions of law of first impression in Minnesota.

### I. Minnesota Government Data Practices Act

■ At the state's request, RKMC provided billing records each month.

> All government data collected, created, received, maintained or disseminated by a state agency, political subdivision, or statewide system shall be public unless classified by statute * * * as nonpublic or protected nonpublic * * *.

Minn.Stat. § 13.03, subd. 1 (2000).

> [G]overnment data are public and are accessible by the public for both inspection and copying unless there is federal law, a state statute, or a temporary classification of data that provides that certain data are not public.

Minn.Stat. § 13.01, subd. 3 (2000). The billing records are government data within the meaning of the statute; they meet the statutory criterion of being collected and received by a state agency.

BCBS invokes three exceptions to the statutory definition of government data, but none of the exceptions applies. First, BCBS cites Minn.Stat. § 13.39, subd. 2(a) (2000), which provides that

> data collected by state agencies * * * as part of an active investigation undertaken for the purpose of the commencement or defense of a pending civil legal action * * * are classified as protected nonpublic data * * *.

Even assuming arguendo that the billing records meet this standard, the statute also provides that the state may make them accessible by the public. *Id.* The state says in its brief that it "does not oppose release of the tobacco-litigation billing records under the Data Practices Act." Therefore, this exception does not apply.

Second, BCBS relies on Minn.Stat. § 13.43, subd. 1 (2000), which defines "personnel data" as "data on individuals collected because the individual * * * acts as an independent contractor with a state agency," and states that such data is private. *See id.,* subd. 4 (2000). BCBS argues that the timekeepers' names in the billing records are personnel data. But this data pertains to RKMC members and employees, not to BCBS, which lacks standing to invoke the exception.[4]

Third, BCBS relies on Minn.Stat. § 13.65, subd. 1 (2000), providing that certain "data created, collected and maintained by the office of the attorney general are classified as private data on individuals." The billing records were not "created, collected and maintained by the office of the attorney general" so this exception does not apply to them. Because none of

---

4. BCBS also relies on *Annandale Advocate v. City of Annandale,* 435 N.W.2d 24 (Minn. 1989) (holding that investigative report into police chief's conduct was protected as private personnel data). But in that case, the subject of the report, not a third party, was seeking its classification and protection as private personnel data. *Id.* at 25.

the exceptions applies, the billing records are government data.

■ But BCBS argues that, even if they are government data, at least parts of them are protected from disclosure by the attorney-client privilege and/or the work-product doctrine. "Entire documents may not be withheld under the Minnesota Government Data Practices Act merely because they contain both public and nonpublic data." *N.W. Publications, Inc. v. City of Bloomington,* 499 N.W.2d 509, 509 (Minn.App.1993). Therefore, we examine the application of the attorney-client privilege and the work-product doctrine to the billing records.

## II. The Attorney–Client Privilege

■ Minn.Stat. § 595.02, subd. 1(b) (2000), provides the statutory basis for the privilege.[5]

> An attorney cannot, without the consent of the attorney's client, be examined as to any communication made by the client to the attorney or the attorney's advice given thereon in the course of professional duty; nor can any employee of the attorney be examined as to the communication or advice, without the client's consent.

Because billing records are not "communication made by the client," they come under the privilege only if they are "attorney's advice given [on a client's communication] in the course of professional duty."

No Minnesota case addresses whether billing records subject to the Minnesota Government Data Practices Act are pro-

tected by the privilege, but other jurisdictions have addressed the issue. Their holdings were recently summarized in *Cypress Media, Inc. v. City of Overland Park,* 268 Kan. 407, 997 P.2d 681 (2000). *Cypress Media* first noted that the attorney-client privilege

> applies only where necessary to achieve its purpose. * * * [I]t protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.

*Id.* at 689 (quoting *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). Three cases, *Clarke v. Am. Commerce Nat'l Bank,* 974 F.2d 127, 130 (9th Cir.1992); *Beavers v. Hobbs,* 176 F.R.D. 562, 564–65 (S.D.Iowa 1997); and *Burton v. R.J. Reynolds Tobacco Co.,* 170 F.R.D. 481, 484 (D.Kan.1997), were cited as examples of the view that,

> where the narrative descriptions in billing statements provide only general descriptions of the nature of the services performed and do not reveal the subject of confidential communications with any specificity, they are not privileged.

*Cypress Media,* 997 P.2d at 691. *Cypress Media* also relies on *Tipton v. Barton,* 747 S.W.2d 325, 332 (Mo.Ct.App.1988) (concerning "billing statements [that] do not include detailed entries which advise, analyze or discuss privileged communications"), and *ERA Franchise Sys., Inc. v. N. Ins. Co. of N.Y.,* 183 F.R.D. 276, 280 (D.Kan.1998) ("information regarding clients' fees is not protected by attorney-client privilege because payment of fees is not a confidential communication between

---

**5.** The classic explication of privilege is:
(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from dis-

closure by himself or by the legal adviser, (8) except the protection be waived.
*Kobluk v. Univ. of Minn.,* 574 N.W.2d 436, 440 (Minn.1998) (quoting 8 John Henry Wigmore, *Evidence* § 2292, at 554 (McNaughton rev.1961)).

attorney and client"), to support its holding that "all narrative statements in attorney fee statements are not per se privileged * * *." *Cypress Media*, 997 P.2d at 693.

■ Here, we hold that the billing records are not protected in their entirety by the attorney-client privilege: much of the information in them is not confidential, and much of it would have been disclosed regardless of the existence of the privilege.

■ The Minnesota Supreme Court has recently discussed the scope of the privilege in other contexts and set out the proper procedure for an investigation of what the privilege protects. *Kobluk v. Univ. of Minn.*, 574 N.W.2d 436 (Minn. 1998), concluded that both preliminary drafts of a letter conveying the university's decision to deny tenure were protected by the privilege.

> [T]he party resisting disclosure bears the burden of presenting facts to establish the privilege's existence.
>
> * * * *
>
> * * * [A] court should decide, as a threshold matter, whether the contested document embodies a communication in which legal advice is sought or rendered.

*Id.* at 440, 444. Here, the degree to which the billing records rendered legal advice was minimal: only those entries referring to specific legal theories even arguably meet this standard.

Another supreme court case considered a conflict between the attorney-client privilege and the open meeting law and held that the privilege applies only when "the balancing of [its] purposes * * * against those served by the Open Meeting Law dictates the need for absolute confidentiality." *Mader*, 642 N.W.2d at 730.

> [T]he public has a right to be informed of all actions and deliberations made in connection with activities ultimately geared to affect the public interest. Moreover, the public's input and its knowledge of the bases for the decisions of its elected officials lie at the heart of a democratic government. * * * [T]he attorney-client exception could swallow the rule of public access.

*Id.* at 741–42 (citation omitted). *Mader* is not on point factually, but it indicates the limitations imposed on the attorney-client privilege by the public's right to know.

Certainly, the public has a right to at least some of the government data contained in the billing records, and the attorney-client privilege protects only data that renders legal advice and that might not have been disclosed absent the privilege. *See Cypress Media*, 997 P.2d at 689. We conclude that the district court erred in deciding that the attorney-client privilege protected all the data in the billing records.

## III. The Work–Product Doctrine

■ BCBS argues that, even if the billing records are not protected in their entirety by the attorney-client privilege, they are protected in their entirety as attorney work product. Because the billing records are government data, the work-product doctrine may protect parts of them, but we conclude again that they are not protected in their entirety.

■ The doctrine is codified in Minn. R. Civ. P. 26.02(c).

> [A] party may obtain discovery of documents * * * prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney * * *) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent

of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Caselaw further defines items protected by the doctrine.

"Work product" is defined as an attorney's mental impressions, trial strategy, and legal theories in preparing a case for trial. * * * However, materials prepared in anticipation of litigation that do not contain opinions, conclusions, legal theories, or mental impressions of counsel are not work product * * *.

*Dennie v. Metro. Med. Ctr.*, 387 N.W.2d 401, 406 (Minn.1986) (citations omitted).

 Therefore, to be protected by the doctrine, material must contain opinions, conclusions, legal theories, or mental impressions of counsel, and it must have been prepared in anticipation of litigation.

Whether documents were prepared in anticipation of litigation is a factual determination. The test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Bieter Co. v. Blomquist*, 156 F.R.D. 173, 180 (D.Minn.1994) (quotation omitted). Litigation was in prospect or ongoing when the billing documents were prepared, so the issue becomes which parts of them were prepared in the regular course of business and which parts were prepared for the purpose of litigation.

 Only "opinions, conclusions, legal theories, or mental impressions of counsel" qualify as work product. *Dennie*, 387 N.W.2d at 406. Generally, billing records do not fall into this category. *See Bieter*, 156 F.R.D. at 180 (holding that billing records were discoverable and citing *Rayman v. Am. Charter Fed. Sav. & Loan Ass'n*, 148 F.R.D. 647, 660 (D.Neb.1993) (attorney billing statements not subject to work-product protection)). However, work descriptions that contain RKMC's opinions, conclusions, legal theories, or mental impressions arguably would be protected. *See id.* at n. 15 (descriptions prepared in anticipation of litigation arguably constitute work product).

Minnesota has adopted

the rationale of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385 [91 L.Ed. 451 (1947)] * * * undertaking to strike a balance between protecting the work product of an attorney and the public policy interest in allowing reasonable and necessary inquiries into factual matters * * *.

*Leininger v. Swadner*, 279 Minn. 251, 258, 156 N.W.2d 254, 259 (1968). This balance is achieved neither by invoking the work-product doctrine to protect the billing records in their entirety nor by deciding that the doctrine does not apply to the billing records.

## IV. In Camera Inspection

 The billing records are government data and, as such, accessible by appellants. But this accessibility may be abrogated by the attorney-client privilege, which protects those parts of the billing records in which RKMC communicated legal advice that would not have been disclosed but for the existence of the privilege, *see Cypress Media*, 997 P.2d at 692,

and by the work-product doctrine, which protects those parts of the billing records in which RKMC communicated opinions, conclusions, legal theories, or mental impressions prepared in anticipation of litigation. *See Dennie,* 387 N.W.2d at 406.

 "[P]arties claiming the [attorney-client] privilege will have to show its application to particular narrative statements in billing records." *Cypress Media,* 997 P.2d at 693. The burden of establishing adequate reasons to justify production is on the party seeking discovery of the lawyer's work product. *Leininger,* 279 Minn. at 259, 156 N.W.2d at 260. Therefore, BCBS must identify for the district court's in camera review those portions of the billing records that it claims are protected by the attorney-client privilege or the work-product doctrine.

## DECISION

The billing records for work done by RKMC jointly for the state and BCBS are accessible by the public pursuant to the Minnesota Government Data Practices Act, and neither the attorney-client privilege nor the work-product doctrine protects the billing records in their entirety. We therefore reverse and remand for BCBS to identify for the district court's in camera review those portions of the billing records claimed to be protected.

**Reversed and remanded.**