**In re PAUL W. ABBOTT COMPANY, INC., Appellant,**

**In re Minnesota Asbestos Litigation.**

**No. A08–1105.**

Supreme Court of Minnesota.

June 18, 2009.

Richard J. Leighton, Johnson, Killen & Seiler, P.A., Duluth, Minnesota, for appellant.

Michael S. Polk, Michael R. Strom, Chad C. Alexander, Shauna M. Verheyen, Sieben Polk, P.A., Hastings, Minnesota, for respondents.

Diane B. Bratvold, Max Heerman, Kevin M. Decker, Daniel J. Supalla, Briggs and Morgan, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

## OPINION

PAGE, Justice.

This appeal comes before us in the context of ongoing asbestos litigation. The appellant, Paul W. Abbott Company, Inc. (PWA), a corporation that was involuntarily dissolved under Minnesota law in 1997, is a defendant in the asbestos litigation. The respondents in this appeal are the plaintiffs in that litigation. One of the insurance companies defending PWA's interests in the asbestos litigation is TIG Insurance Company (TIG). At issue is whether respondents may depose an attorney who, as part of PWA's defense strategy in the asbestos litigation, assisted PWA in obtaining a certificate of voluntary dissolution from the Minnesota Secretary of State. The Ramsey County District Court denied PWA's motion for a protective order, and PWA petitioned the court of ap-

peals for a writ of prohibition and for discretionary review. The court of appeals denied both petitions. We granted PWA's petition seeking further review of the denial of the writ of prohibition. PWA claims that allowing the deposition of the attorney compels the revelation of privileged and/or confidential communications. We affirm.

PWA was incorporated on April 28, 1954, as an insulation company. On November 19, 1993, John Abbott, the President and CEO of PWA, filed a notice of intent to dissolve PWA but never completed the dissolution process. Although the record is unclear, it appears that PWA ceased doing business in 1993, and since then has been insolvent. Having failed to file the annual registration required by Minn.Stat. § 302A.821, subd. 1 (1996), for three consecutive years, PWA was involuntarily dissolved by the Secretary of State on August 1, 1997. *See id.*, subd. 5 (1996).

If John Abbott had completed the voluntary dissolution process, PWA would have received the benefit of a statutory bar on claims against dissolved corporations. Minn.Stat. § 302A.781, subd. 1 (1996). But because PWA had been involuntarily dissolved, the statutory bar on claims never applied to PWA, and PWA continued to be subject to asbestos injury claims after August 1, 1997. Minn.Stat. § 302A.821, subd. 5(b) (1996).

In 2007, the legislature amended section 302.781 to exempt personal injury claims from the statutory bar on claims against dissolved corporations. Act of May 7, 2007, ch. 54, art. 5, § 6, 2007 Minn. Laws 206, 263 (codified at Minn.Stat. § 302A.781, subd. 5 (2008)). The amendment was to take effect on July 1, 2007. The record suggests that TIG believed that if it could get PWA reinstated and voluntarily dissolved before that date, the bar on claims against dissolved corporations would apply; but if the reinstatement

and voluntary dissolution happened after July 1, 2007, PWA would remain vulnerable to asbestos injury claims because the amendment exempted personal injury claims from the statutory bar on claims.

John Abbott passed away in November 2006. In June 2007, a representative of TIG contacted John Abbott's widow, Karen Abbott, for the purpose of asking Karen Abbott if she would be willing to reinstate PWA's corporate status in order to formally dissolve the corporation. Karen Abbott was surprised to hear that the company was still in existence. She discussed the idea with her family. In her deposition, Karen Abbott testified that she spoke with Jon Parrington, her husband's lawyer, who told her that he could not give her any advice because he was representing PWA on existing asbestos claims. When contacted again later that month by TIG, Karen Abbott asked the insurance company to write a letter absolving her of financial responsibility for the costs of the reinstatement and dissolution. On June 25, 2007, TIG sent Karen Abbott a letter agreeing to pay all filing fees and reasonable attorney fees. The letter also advised Karen Abbott of the following:

> [Y]ou should consult with your own attorney about the corporate reinstatement and dissolution. We understand that you have done so in deciding to proceed with the reinstatement and dissolution. We encourage your continued involvement with an attorney, if you so choose, as TIG cannot give you any legal advice about the reinstatement and dissolution.

Karen Abbott agreed to assist TIG. As a result, TIG retained Leif Rasmussen to facilitate the reinstatement and dissolution. On June 27, 2007, Rasmussen drafted several documents on behalf of PWA that required the signature of a person authorized to sign on behalf of PWA, including

one document indicating that Karen Abbott was the CEO of PWA. That same day, Rasmussen brought the documents to Karen Abbott's house for her signature, which she provided. Rasmussen then filed the documents with the Secretary of State and obtained a certificate of dissolution for PWA, formally terminating the company's corporate existence as of that day.

Respondents questioned the validity of the reinstatement and dissolution of PWA described above. Karen Abbott was deposed on November 5, 2007, by respondents about her role in PWA, her knowledge of PWA's situation, and her conversations with TIG and with Rasmussen. Afterward, respondents sought to depose Rasmussen. PWA, seeking to prevent the deposition of Rasmussen, filed a motion for a protective order and to quash the subpoena, claiming that the communications between Rasmussen and Karen Abbott were protected by attorney-client privilege or by the ethical rules regarding confidentiality. PWA based its motion on the factual premise that "Karen Abbott was, at the very least, a vice president/secretary of [PWA, and] Rasmussen was acting as a lawyer for [PWA], preparing for the corporation's dissolution." No judge was available to hear the motion, and the deposition of Rasmussen went forward. An attorney for PWA objected to all questions related to communications between Rasmussen and Karen Abbott and, on the advice of his own attorney, Rasmussen did not answer any questions that would arguably invade the attorney-client privilege.

The district court subsequently held a hearing on PWA's motion for a protective order to prohibit Rasmussen from testifying as to communications between him and Karen Abbott. After the hearing, the court denied the relief sought, finding that "[t]here was no attorney/client relationship established with Ms. Abbott, as an individual, and Mr. Rasmussen." The court also found that "there was no attorney/client relationship established between Ms. Abbott, as an officer or director or even an employee of the corporation and Mr. Rasmussen." The court did not make a finding on whether there was an attorney-client relationship between Rasmussen and PWA.

PWA petitioned the court of appeals for a writ of prohibition and for discretionary review. The court of appeals denied both petitions. In denying the petition for the writ of prohibition, the court of appeals held that PWA had not "shown that the district court's order was an abuse of discretion." This appeal followed.

I.

 "A writ of prohibition is an extraordinary remedy and is only used in extraordinary cases." *In re Comm'r of Pub. Safety*, 735 N.W.2d 706, 710 (Minn. 2007). In discovery cases, writs of prohibition limit a district court's wide discretion, and they should only be issued if

> it appears that the court is about to exceed its jurisdiction or where it appears the action of the court relates to a matter that is decisive of the case; *where the court has ordered the production of information clearly not discoverable and there is no adequate remedy at law;* or in rare instances where it will settle a rule of practice affecting all litigants.

*Thermorama, Inc. v. Shiller*, 271 Minn. 79, 83–84, 135 N.W.2d 43, 46 (1965) (emphasis added).

 PWA alleged that a writ of prohibition was necessary because the district court's order was "an exercise of discretion unauthorized by law for which there is no adequate remedy." A district court has

"broad discretion" under Minn. R. Civ. P. 26.03 "to fashion protective orders and to order discovery only on specified terms and conditions." *Erickson v. MacArthur*, 414 N.W.2d 406, 409 (Minn.1987). On appeal, we review "a district court's order for an abuse of discretion by determining whether the district court made findings unsupported by the evidence or by improperly applying the law." *In re Comm'r of Pub. Safety*, 735 N.W.2d at 711.

 "[W]hether a document or communication is privileged is a question of fact." *Brown v. St. Paul City Ry. Co.*, 241 Minn. 15, 34, 62 N.W.2d 688, 701 (1954). We have held that "[w]hether any element of privilege might appear to exist is for [the party claiming the privilege] to establish." *Leininger v. Swadner*, 279 Minn. 251, 256, 156 N.W.2d 254, 258 (1968). An attorney-client relationship must exist before communications can be considered privileged. *See* Minn.Stat. § 595.02, subd. 1(b) (2008). The existence of an attorney-client relationship is "usually a question of fact dependent upon the communications and circumstances." *Admiral Merchs. Motor Freight, Inc. v. O'Connor & Hannan*, 494 N.W.2d 261, 265 (Minn.1992). An attorney-client relationship may be established under either a contract or a tort theory. *Pine Island Farmers Coop v. Erstad & Riemer, P.A.*, 649 N.W.2d 444, 448 (Minn.2002). Under a contract theory, an agreement must be shown based on "the circumstances, relationship, and conduct of the parties." *High v. Supreme Lodge of the World*, 210 Minn. 471, 473, 298 N.W. 723, 725 (1941). Under a tort theory, a relationship exists "when a person seeks and receives legal advice from an attorney in circumstances in which a reasonable person would rely on the advice." *Pine Island*, 649 N.W.2d at 448 (citing *Togstad v. Vesely, Otto, Miller & Keefe*, 291

N.W.2d 686, 693 n. 4 (Minn.1980); *Admiral Merchs.*, 494 N.W.2d at 265–66).

In this case, PWA contends that the conversations on June 27, 2007, are privileged because an attorney-client relationship existed between Rasmussen and Karen Abbott. PWA argues that, because Rasmussen represented PWA in the dissolution process and because Karen Abbott was the sole corporate officer of PWA, there must have been an attorney-client relationship between Rasmussen and Karen Abbott.

 The record before us does not support PWA's claim that any attorney-client relationship was formed between Rasmussen and Karen Abbott. The district court concluded that no attorney-client relationship existed between Rasmussen and Karen Abbott in either her individual capacity or in a capacity as an officer, director, or employee of PWA. The record supports the district court's findings. When Karen Abbott was asked at her deposition if she thought she held the offices of vice president and secretary of PWA, Karen Abbott replied, "No." When asked if Rasmussen told her that he represented TIG, Karen Abbott replied, "I guess maybe he might have 'cause that's who I would be expecting to hear from next." And when asked if Rasmussen was her attorney or the company's attorney, Karen Abbott replied, "No." Karen Abbott also testified at her deposition that she was never the CEO of PWA, that she did not know who the directors of PWA were on June 27, 2007, and that before June 2007 she had never taken any action on behalf of PWA. She testified that "it just seemed so unreal that I could just dissolve a company that I never had anything to do with."

Based on the circumstances presented in the record in this case and the communications between Rasmussen and Karen Abbott, we conclude that PWA has not estab-

lished that an attorney-client relationship existed between Rasmussen and Karen Abbott or that the June 27, 2007, communications between Rasmussen and Karen Abbott were privileged. Because the question of privilege is one of fact and the district court's findings are supported by the evidence, we also conclude that the district court did not abuse its discretion when it denied PWA's motion for a protective order. Finally, we conclude that, on the question of privilege, the court of appeals did not err when it denied PWA's petition for a writ of prohibition because the communications were not "clearly not discoverable."

## II.

PWA also contends that the district court order would force Rasmussen to violate his ethical duty of confidentiality. After a careful review of the record, we are satisfied that PWA has not met its burden of showing that the communications between Rasmussen and Karen Abbott were "clearly not discoverable." We therefore conclude that on this issue the court of appeals did not err when it denied PWA's petition for a writ of prohibition.

Affirmed.

## CONCURRENCE

MAGNUSON, Chief Justice (concurring).

I write separately to emphasize the narrow scope of our decision today. The parties and the amicus discuss at length the right of an insurer to control the defense of litigation, and to provide counsel to conduct that defense. Nothing in our decision challenges those principles. However, in *Pine Island Farmers Coop v. Erstad & Riemer, P.A.*, 649 N.W.2d 444, 449 (Minn. 2002), we made it clear that a lawyer retained by an insurance company is the lawyer for the insured. Under the Minnesota Rules of Professional Conduct, it is the responsibility of a lawyer to clearly communicate the formation of the attorney-client relationship, including identifying the scope of representation and the basis for any fees charged. *See* Rule 1.5(b). At the same time, while Rule 1.8(f) allows a lawyer's compensation to be paid by someone other than the client, the rule requires that the client give her informed consent to such an arrangement, and that the attorney exercise his independent judgment in the scope of representation. Regardless of the right of an insurer to control the defense of a covered claim asserted against an insured, an attorney-client relationship must be established as provided for by the Rules of Professional Conduct. That was simply not done here, and that is the basis for our decision.

Finally, our opinion should not be read to generally endorse discovery depositions of opposing counsel. Much has been written on the reasons courts might constrain efforts to depose the lawyers for parties in litigation. *See, e.g.,* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2102 (2d ed. 1994). We are not asked to address this issue, and do not do so.

GILDEA, Justice (concurring).

I join in the concurrence of Chief Justice Magnuson.