*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2044**

Webb Golden Valley, LLC,
Appellant,

Evelyn Thomson,
Plaintiff,

vs.

State of Minnesota, et al.,
Respondents,

Global One Golden Valley, LLC, intervenor,
Respondent.

**Filed July 7, 2014
Reversed and remanded; motion denied
Smith, Judge**

Hennepin County District Court
File No. 21-CV-13-5177

Daniel N. Rosen, Mark J. Kiperstin, Parker Rosen, LLC, Minneapolis, Minnesota; and

Eric J. Magnuson, Robins, Kaplan, Miller & Ciresi, LLP, Minneapolis, Minnesota (for appellants)

Lori Swanson, Attorney General, Natasha M. Karn, Assistant Attorney General, St. Paul, Minnesota (for respondent State of Minnesota, et al.)

James R. Dorsey, Marc D. Simpson, Ryan M. Sugden, Stinson Leonard Street, LLP, Minneapolis, Minnesota (for respondent Global One Golden Valley)

Allen D. Barnard, John T. Sullivan, Best & Flanagan LLP, Minneapolis, Minnesota (for respondent Golden Valley Housing and Redevelopment Authority)

Considered and decided by Cleary, Chief Judge; Hudson, Judge; and Smith, Judge.

## UNPUBLISHED OPINION

**SMITH**, Judge

We reverse the district court's dismissal of appellant's suit for failure to pay a surety bond because respondent's allegation that delays caused by the litigation will harm the public interest is not supported by evidence in the record. We reverse the district court's order partially dismissing appellant's declaratory judgment action because appellant has standing as possessor of an interest protected by Minn. Stat. § 161.44 (2012). We remand for further proceedings and deny the motion for expedited release of this opinion.

## FACTS

Between 1988 and 1999, respondent State of Minnesota acquired title to three parcels of land near what is now I-394 and Highway 100 in Golden Valley for use during construction of I-394. The state no longer needs the parcels for road construction and plans to transfer them to respondent Golden Valley Housing and Redevelopment Authority (GVHRA). GVHRA has agreed to "[u]se commercially reasonable efforts to acquire" the parcels in order to transfer at least one of them to respondent Global One Golden Valley, LLC, but its agreement with Global One disavows any obligation to perform if it is unable to acquire all of the parcels. Global One plans to construct residential apartments on portions of the transferred parcels.

2

Global One originally planned to complete construction of at least one of the buildings by September 30, 2014, but it agreed that "[t]he times . . . for commencement and completion of construction shall . . . be extended to the extent of any Unavoidable Delays," "including but not limited to actions of governmental authorities other than [Golden Valley] or [GVHRA], labor disputes, unusually severe or prolonged bad weather, acts of God, civil disturbances, accidents, fire or other casualty, injunctions, or other court or administrative orders."

In March 2013, appellant Webb Golden Valley, LLC ("Webb"), sued the state, seeking a declaratory judgment that the transfer violated Minn. Stat. § 161.44, an injunction to halt the transfer, and an injunction requiring the state to either sell the property to Webb or offer it for public sale to the highest bidder. The district court granted Global One's motion to intervene.

On July 22, 2013, the district court granted motions by the state and Global One to dismiss Webb's suit with regard to two of the parcels (Tract N and Lot 18), holding that Webb lacked standing to assert any rights under Minn. Stat. § 161.44 because it did not possess any legal interest in these two parcels. On August 9, the district court denied Webb permission to file a motion to reconsider.

On August 5, a previous owner of one of the three parcels filed a separate complaint seeking the same relief as Webb, and the district court consolidated the cases. The state and Global One again moved to dismiss the complaints. While those motions were pending, GVHRA moved to appear specially, and it requested that the district court require Webb and the previous owner to post a surety bond. After a hearing, the district

court found that a surety bond of $3.2 million was justified under Minn. Stat. § 469.044 (2012) because the lawsuits "call into question [GVHRA's] power, right, or authority to execute and perform redevelopment contracts . . . by preventing [GVHRA] from receiving the land the State wishes to convey," and because "the lawsuits 'might directly or indirectly impair [GVHRA's] borrowing power, increase the cost of its projects, or be otherwise injurious to the public interest.'" As support, the district court cited Global One's statements that delays caused by the litigation might cause investors to pull out of the project, resulting in its inability to develop the land.

Neither Webb nor the previous owner posted the surety bond, and the district court dismissed their complaints.

## D E C I S I O N

## I.

Webb argues that the district court erred by requiring it to submit a $3.2 million surety bond based on a motion by GVHRA. It argues that GVHRA lacks the authority to move the district court to require a surety bond because the litigation does not implicate any "right, power, or authority" of GVHRA and because the litigation does not injure the public. *See* Minn. Stat. § 469.044 (2012) (addressing circumstances under which a surety bond may be sought). Identifying who may seek a surety bond under Minn. Stat. § 469.044 requires interpretation of that statute. "Interpretation of a statute presents a question of law that we review de novo." *Swenson v. Nickaboine*, 793 N.W.2d 738, 741 (Minn. 2011). But we review a district court's ultimate determination of the need for and amount of a surety bond only for an abuse of discretion. *Anderly v. City of Minneapolis*,

4

552 N.W.2d 236, 241 (Minn. 1996). A district court abuses its discretion when it makes findings unsupported by evidence or if it misapplies the law. *In re Paul W. Abbott Co., Inc.*, 767 N.W.2d 14, 18 (Minn. 2009).

A housing and redevelopment authority[1] may move the district court to require a surety bond when (1) the litigation "draw[s] in[to] question the right, power, or authority" of the housing authority "to make or perform any contract or agreement" and (2) the housing and redevelopment authority "deems that the pendency of the litigation might directly or indirectly impair its borrowing power, increase the cost of its projects, or be otherwise injurious to the public interest." Minn. Stat. § 469.044. A housing and redevelopment authority may appear specially to make a motion for a surety bond. Minn. Stat. § 469.045 (2012). "If the [district] court determines that loss or damage to the public or taxpayers may result from the pendency of the action or proceeding, the [district] court may require the party who instituted [the litigation] to give a surety bond . . . in a penal sum to be determined by the [district] court to protect against loss or damage." *Id.* "If the bond so ordered is not filed within the reasonable time allowed by the [district] court, the action or proceeding shall be dismissed with prejudice." *Id.*

---

[1] Housing and redevelopment authorities are public corporations established in each city in the state for purposes including providing a "sufficient supply" of housing, clearing blighted areas, and planning housing projects. S*ee* Minn. Stat. §§ 469.003, subd. 1 (2012) (creating a housing and redevelopment authority in each city); 469.002, subd. 2 (2012) (defining "authority" as a housing and redevelopment authority when the term is used in sections 469.001 through 469.047); 469.012, subd. 1 (2012) (stating that a housing and redevelopment authority is a public corporation); 469.001 (2012) (stating the purposes of a housing and redevelopment authority). The parties agree that the provisions of sections 469.001 through 469.047 apply to GVHRA.

Webb first argues that its litigation does not implicate a "right, power, or authority" of GVHRA because GVHRA holds no entitlement to receive the land from the state. But section 469.044 focuses on the "right, power, or authority" of a housing and redevelopment authority to "make or perform any contract or agreement." Since GVHRA needs to receive the land from the state to perform its agreement with Global One, Webb's litigation challenging that transfer and requesting that the land be transferred to Webb or put up for sale jeopardizes GVHRA's authority to perform under that agreement. Accordingly, Webb's first argument fails.

Webb also argues that its litigation poses no threat of injury to the public. The district court found that Webb's litigation threatened to harm the public interest by causing investors to withdraw from the project, which could cause the project to collapse, resulting in frustration of GVHRA's goals and a loss of property tax revenue. Loss of financing for a project as a result of pending litigation is sufficient to justify a surety-bond requirement. *See, e.g.*, *Anderly*, 552 N.W.2d at 241 (concluding that a surety bond was justified when project financing was conditions on resolution of litigation). But such a finding must be supported by evidence in the record. *See Paul W. Abbott Co.*, 767 N.W.2d at 18. In *Anderly*, for example, the supreme court affirmed a district court's requirement of a surety bond when its determination that the pending litigation threatened to cause investors to pull out of a project was supported by testimony from one of the investors that was threatening to pull out. *See* 552 N.W.2d at 241-42.

The record here lacks any such testimony from investors threatening to pull out of the project. Instead it contains only a general claim from Global One that unidentified

investors will pull out as a result of the pending litigation, causing the project to collapse. The affidavit submitted on behalf of GVHRA contains no indication that investors would pull out or that the project would collapse because of delays. Unsupported conclusory claims from an interested party—claims that Webb was not given the opportunity to challenge in an evidentiary hearing—are inadequate to support the district court's finding that the public would be harmed by the collapse of the project resulting from Webb's litigation. *Cf. DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) ("[T]he party resisting summary judgment must do more than rest on mere averments."). Accordingly, we hold that Global One's unsupported claim is insufficient to support the district court's order for a surety bond.

GVHRA implicitly argues that the public is injured by a delay as well as by the collapse of the project. It asserts that a loss of tax revenues resulting from delays constitutes an injury to the public, thereby justifying a surety bond. But its agreement with Global One foresaw and provided for potential delays. The legislature has also specifically excluded an increase of tax revenues from its definition of "public purposes" for lands seized by eminent domain. Minn. Stat. § 117.025, subd. 11(b) (2012). We find it difficult to see how a lost tax-revenue opportunity would be inadequate to support a taking for a "public purpose," but sufficient to demonstrate a "public injury" supporting a demand for a surety bond in a suit challenging whether a particular disposition of seized land was for a "public purpose." We therefore conclude that GVHRA's argument also fails to support the district court's grant of a surety bond, and we reverse the district court's partial dismissal of Webb's complaint for failure to post a surety bond.

Webb argues that the district court also erred by partially dismissing its complaint for lack of standing. "When the facts relevant to standing are undisputed, the standing inquiry raises a question of law subject to de novo review." *Olson v. State*, 742 N.W.2d 681, 684 (Minn. App. 2007). "To establish standing, a plaintiff must have sufficient personal stake in a justiciable controversy." *Id.* "A sufficient stake may exist if the party has suffered an injury-in-fact or if the legislature has conferred standing by statute." *Id.* (internal quotation marks omitted). "[S]tanding for purposes of alleging violation of a statute . . . requires a showing of injury in fact, plus an interest arguably among those sought to be protected by the statute in question." *Dufresne v. Am. Nat'l Bank & Trust Co.*, 374 N.W.2d 763, 766 (Minn. App. 1985) (internal quotation marks omitted) (citing *Twin Ports Convalescent, Inc. v. Minn. State Bd. of Health*, 257 N.W.2d 343, 346 (Minn. 1977)), *review denied* (Minn. Dec. 13, 1985).

Webb argues that it has standing to challenge the state's conveyance of Tract N and Lot 18 because it would be prevented from bidding on the land and that this interest is among those protected by section 161.44, which governs relinquishment by the state of lands no longer needed for trunk highways. Its argument is well-founded. If the transfer is accomplished as intended by the state, GVHRA, and Global One, Webb will be precluded from any opportunity to purchase the land. It alleges an interest in purchasing the land to incorporate it with its nearby land holdings. This by itself constitutes sufficient injury to give Webb standing to challenge the procedure by which the state intends to dispose of the land. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7,

112 S. Ct. 2130, 2142 n.7 (1992) ("[O]ne living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement . . . .").

More importantly, it is clear that Webb's interest is among those protected by the land-relinquishment statute. "Interpretation of a statute presents a question of law, which we review de novo." *Swenson*, 793 N.W.2d at 741. Section 161.44 provides that "any lands . . . owned in fee by the state for trunk highway purposes but . . . in excess of what is needed for highway purposes may be transferred for public purposes to any political subdivision . . . of the state." Minn. Stat. § 161.44, subd. 1 (2012). Lands not so transferred "must first be offered for reconveyance to the previous owner or the owner's surviving spouse" or to the owners (or surviving spouses of owners) of larger tracts from which the state's tracts were taken. *Id.*, subds. 2, 3 (2012). Lands not transferred for public purposes to a subdivision of the state and not reconveyed to a previous owner or surviving spouse may be sold to the highest bidder, either through advertisement or public auction. *See id.*, subds. 5, 6 (2012). These provisions protect at least three groups of persons interested in excess trunk-highway land: (1) other government entities who want to use the land for "public purposes," (2) previous owners and their surviving spouses who want to reassemble the unused portions of their prior holdings, and (3) members of the public who want to bid on the land. Webb's interest lies squarely within the third category of interests protected by the land-relinquishment statute. *Cf. Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 950-52 (7th Cir. 2005) (holding that a person denied the statutory right to participate in a process regarding use of land has standing to

9

challenge an alleged violation of the governing statute). We therefore conclude that Webb has standing to challenge the state's conveyance of Tract N and Lot 18 under Minn. Stat. § 161.44, we reverse the district court's partial dismissal of Webb's complaint, and we remand to the district court for further proceedings not inconsistent with this opinion.[2]

### III.

GVHRA and Global One jointly moved this court for an expedited opinion release, citing damage to the project that would result from continuing delay. Because we have already found that there is no evidence in the record supporting the claim that the litigation presents an injury to the public, their motion is denied.

**Reversed and remanded; motion denied.**

---

[2] Webb also seeks a ruling on the merits of the transfer, arguing that the district court determined that the definition of "public purpose" in Minn. Stat. § 117.025 applies, and alleging that this determination is now "law of the case" that prohibits the state's planned conveyance entirely. But the district court's application of section 117.025 was limited to the parcel regarding which it did not dismiss Webb's complaint, and it did not reach a final decision as to whether that conveyance satisfied the "public purposes" component of section 161.44. The issue is therefore not within the scope of our review. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts generally address only questions previously presented to and considered by the district court).