**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0309**

In re Daniel Cragg, et al.,
Petitioners,

Dalvin Cook,
Respondent,

vs.

Gracelyn Trimble,
Defendant,

Daniel Cragg, et al.,
Petitioners.

**Filed November 6, 2023
Writ granted
Frisch, Judge**

Hennepin County District Court
File No. 27-CV-21-14617

Terrance W. Moore, Elena D. Harvey, J. Robert Keena, Hellmuth & Johnson, Edina, Minnesota; and

Gary L. Manka, Katz & Manka, Ltd., Minnetonka, Minnesota (for respondent)

Kelly A. Putney, Christopher R. Morris, Shannon E. Eckman, Bassford Remele, P.A., Minneapolis, Minnesota (for petitioners)

Considered and decided by Gaïtas, Presiding Judge; Slieter, Judge; and Frisch, Judge.

**SYLLABUS**

Disclosure of a final civil complaint before it is served or filed in district court does not result in a waiver of the attorney-client privilege or work-product protection.

**OPINION**

**FRISCH**, Judge

Petitioners seek a writ of prohibition to preclude enforcement of a discovery order compelling disclosure of information they assert is protected by the attorney-client privilege and the work-product doctrine. Because the district court abused its discretion in concluding that the sharing of a final civil complaint with a newspaper reporter before it was served or filed in district court resulted in a waiver of the attorney-client privilege and work-product protection, and the district court's order otherwise compelled counsel to provide certain information protected by either the attorney-client privilege or work-product doctrine, the district court exceeded its authority to order discovery. We therefore grant the writ.[1]

**FACTS**

Petitioners Daniel Cragg, Anne St. Amant, and Eckland & Blando, LLP (referred to together as counsel or Trimble's counsel) are attorneys for Gracelyn Trimble. In November 2020, Trimble, who was in a relationship with then-Minnesota Vikings football player respondent Dalvin Cook, flew from her home in Florida to meet Cook at his

---

[1] In this opinion, we identify the "complaint" as the final pleading setting forth a claim for relief as defined by Minn. R. Civ. P. 8.01 and the document accompanying a summons to commence the action as described in Minn. R. Civ. P. 3.02. We specifically do not refer to the "complaint" as meaning, referencing, or including a draft of a complaint. *See Kobluk v. Univ. of Minn.*, 574 N.W.2d 436, 441-43 (Minn. 1998) (reasoning that a "preliminary draft" or a document may constitute a privileged communication between attorney and client even if the final product is intended for disclosure).

residence in Minnesota. An altercation between Trimble and Cook occurred sometime thereafter. Trimble and Cook dispute the details of the altercation.

Trimble and Cook remained in contact after the November 2020 altercation. But the following July, Trimble retained counsel to represent her in bringing personal-injury claims against Cook. Soon after, Trimble's counsel sent Cook's attorney a demand letter seeking $13.3 million to settle Trimble's claims. The parties communicated about settlement and engaged in mediation, but they did not reach an agreement.

On November 4, 2021, Trimble's counsel contacted the Star Tribune newspaper, asking if a reporter might be interested in Trimble's story. On November 9, Trimble and her counsel met with a Star Tribune reporter. In connection with the meeting, Cragg, a lawyer at Eckland & Blando, shared with the reporter a copy of the final personal-injury complaint that had not yet been served or filed in district court. The Star Tribune reporter then contacted Cook's counsel for comment and gave a copy of the complaint to Cook's counsel. The complaint contains allegations of assault, battery, and false imprisonment of Trimble by Cook. About an hour later, an ESPN reporter posted on the internet statements from Cook's sports agent that Cook was the victim of an assault by Trimble. About two hours later, the Star Tribune reporter posted the following statement on the internet: "Former girlfriend of Vikings' Dalvin Cook files lawsuit alleging physical, emotional abuse." Minutes later, Trimble filed the complaint in Dakota County District Court. The parties do not dispute that the personal-injury complaint shared with the Star Tribune reporter is identical to the personal-injury complaint that was filed in Dakota County District Court. The next day, Trimble's counsel published a press release admonishing

3

ESPN for one-sided reporting and asking Disney, ESPN's parent company, to investigate. The personal-injury action is currently pending in Dakota County District Court and is not the subject of these proceedings.

In December 2021, Cook commenced an action in Hennepin County District Court that included a defamation claim against Trimble's counsel.[2]  The defamation action is premised on allegations that counsel defamed Cook by making untrue statements in the complaint in the Dakota County personal-injury action and in the press release.  Cook also alleged that counsel shared the complaint with the Star Tribune reporter before its service or filing in district court.  These proceedings on counsel's petition for an extraordinary writ arise from the defamation action, which is also currently pending.

In the defamation action, counsel for Cook deposed Cragg.  During the deposition, Cragg declined to answer many questions, asserting that doing so would require him to violate Trimble's attorney-client privilege or disclose information that is immune from discovery as work product.  Cook moved to compel discovery, seeking disclosure of (1) the factual basis of Trimble's $13.3 million settlement demand; (2) communications between counsel and Trimble regarding media strategy or public relations; and (3) information related to counsel's investigation, evaluation, and knowledge of facts underlying the personal-injury action and allegedly defamatory statements made by counsel up to and including the time at which counsel communicated with the media in November 2021. Trimble's counsel opposed the motion.

---

[2]  Although Trimble was originally a named party in the defamation action, she is not currently a party to the action.

Following a hearing, the district court granted the motion to compel.[3] The district court determined that Trimble's counsel waived "the attorney-client privilege relating to the subject matters they voluntarily and deliberately published to the media in November 2021" and "work product protection that could have applied by virtue of their conduct in publishing statements to the media and in raising certain affirmative defenses in this proceeding." The district court also concluded that counsel failed to sustain the burden to demonstrate the applicability of the privilege and that the subject matter of the requested testimony did not implicate confidences.

Trimble's counsel petitioned this court for a writ of prohibition to preclude enforcement of the order to compel. Pursuant to Minn. R. Civ. App. P. 120.03, we ordered full briefing and oral argument.

## ISSUES

I.    Did the district court abuse its discretion by concluding that the sharing of the final complaint with a newspaper reporter before it was served or filed in district court resulted in the waiver of the attorney-client privilege and work-product protection?

II.   Did the district court abuse its discretion by ordering discovery of information protected by the attorney-client privilege and the work-product doctrine?

## ANALYSIS

A writ of prohibition is an appropriate remedy when a district court orders the production of information that is clearly not discoverable and there is no adequate remedy at law. *In re Paul W. Abbott Co.*, 767 N.W.2d 14, 17 (Minn. 2009); *In re Lawrence*, 954 N.W.2d 597, 602 (Minn. App. 2020), *rev. denied* (Minn. Mar. 16, 2021). While discovery

---

[3] A transcript of the hearing is not in the record.

orders are interlocutory and not appealable as a matter of right, "a writ of prohibition is the appropriate form of relief when a court has exceeded its power to order discovery." *Ellingson & Assocs. v. Keefe*, 396 N.W.2d 694, 696 (Minn. App. 1986) (emphasis omitted) (quotation omitted). When a party asserts that the district court has ordered disclosure of privileged information, a later appeal cannot provide an adequate remedy because the privileged documents will have been disclosed. *In re Polaris, Inc.*, 967 N.W.2d 397, 406 (Minn. 2021). We review "a district court's [discovery] order for an abuse of discretion by determining whether the district court made findings unsupported by the evidence or by improperly applying the law." *Lawrence*, 954 N.W.2d at 602 (quotation omitted).

Trimble's counsel argues that the district court abused its discretion in compelling the discovery of the factual basis for the $13.3 million settlement demand, attorney-client communications regarding media strategy and public relations, and information regarding the investigation undertaken by counsel in preparing the complaint in the personal-injury action. We conclude that the district court improperly applied the law in determining that counsel waived the attorney-client privilege and work-product protection by sharing with a newspaper reporter the final complaint in the personal-injury action before it was served or filed in district court. We also conclude that the district court abused its discretion by ordering Trimble's counsel to disclose certain information protected by the attorney-client privilege and work-product doctrine. And, because the district court exceeded its authority to order discovery, we grant the writ of prohibition.

**I.    Disclosure of a final complaint before it is served or filed in district court does not result in a waiver of the attorney-client privilege or work-product protection.**

Trimble's counsel argues that the district court abused its discretion in concluding that the sharing of the final complaint with a newspaper reporter before it was served or filed in district court resulted in a waiver of the attorney-client privilege and work-product protection.[4]  We agree.

The attorney-client privilege applies:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Energy Pol'y Advocs. v. Ellison*, 980 N.W.2d 146, 152 (Minn. 2022) (quotation omitted). "The purpose behind the attorney-client privilege is to promote open and honest discussion between clients and their attorneys."  *Polaris*, 967 N.W.2d at 406 (quotation omitted). Even relevant information may not be disclosed if it is privileged.  *See* Minn. R. Civ. P. 26.02(b) ("Parties may obtain discovery regarding any *nonprivileged* matter that is

---

[4] We acknowledge that attorney-client privilege is held by the client, and generally, only the client may waive the privilege. *See State ex rel. Schuler v. Tahash*, 154 N.W.2d 200, 205 (Minn. 1967) ("[T]he *client* can effectively waive the privilege by conduct or affirmative consent." (emphasis added)); Minn. Stat. § 595.02, subd. 1(b) (2022) (prohibiting the examination of an attorney or their employee about a communication with or advice to the client without the client's consent).  Because we conclude that the disclosure of the final complaint before it was served or filed in district court did not result in a waiver, in part because the final complaint is not protected by the attorney-client privilege, we need not address who may waive the privilege or whether the record supports a conclusion that Trimble waived the privilege.

relevant . . . ." (emphasis added)). Because the privilege tends to suppress probative information, it "must be strictly construed." *Kobluk*, 574 N.W.2d at 440 (quotation omitted).

"The work-product doctrine . . . protects from disclosure an attorney's opinions, conclusions, mental impressions, trial strategy, and legal theories in materials prepared in anticipation of litigation." *Energy Pol'y*, 980 N.W.2d at 152. But "materials prepared in anticipation of litigation that do not contain opinions, conclusions, legal theories, or mental impressions of counsel are not work product and are discoverable." *Dennie v. Metro. Med. Ctr.*, 387 N.W.2d 401, 406 (Minn. 1986).

Evidentiary privileges can be waived by "conduct or affirmative consent." *Schuler*, 154 N.W.2d at 205. "Ordinarily, parties waive the protection of the attorney-client privilege and the work-product doctrine when they disclose *protected information* to third parties." *Energy Pol'y*, 980 N.W.2d at 152 (emphasis added). It necessarily follows that the disclosure of information that is not protected cannot form the basis for the waiver of a privilege or protection. *Cf. Kobluk*, 574 N.W.2d at 441-44 (reasoning that preliminary drafts of a document were protected from compelled disclosure by the attorney-client privilege, even though the third and final draft was intended to be disclosed to a third party and was ultimately disclosed to that third party).

The final complaint that was filed in the personal-injury action is not a communication made in confidence by a client seeking legal advice from their attorney. *See Energy Pol'y*, 980 N.W.2d at 152 (describing the elements of attorney-client privilege). It is instead a pleading setting forth a claim for relief as defined in Minn. R. Civ. P. 8.01

8

and accompanies the summons to commence the action pursuant to Minn. R. Civ. P. 3.02. And although the process of preparing a complaint may very well involve confidences or generate work product, the final complaint that is served or filed in district court to commence an action is not privileged or work product.

We are unaware of any authority supporting the proposition that the pre-filing sharing of a final pleading can result in a waiver of the attorney-client privilege or work-product protection. Neither Cook nor the district court cited any authority from any jurisdiction standing for the proposition that the litigation practice of sharing the final complaint before filing it in district court operates as a waiver of such protections.

We therefore hold that disclosure of the final civil complaint before it is served or filed in district court does not result in a waiver of the attorney-client privilege or work-product protection. The district court abused its discretion and misapplied the law by concluding that the pre-filing disclosure of the final complaint to a newspaper reporter resulted in the waiver of the attorney-client privilege and work-product protection.

Cook argues and the district court concluded that by asserting certain affirmative defenses to the defamation action, counsel placed their knowledge and professional evaluation "at issue," thereby making the information sought discoverable. We disagree. Cook cannot compel an answer disclosing Trimble's privileged communications with counsel or counsel's knowledge or evaluation of their client's claim by initiating an action and asserting that such information is relevant to proving a claim or theory of their

choosing.[5]  *See Muller v. Rogers*, 534 N.W.2d. 724, 726-27 (Minn. App. 1995) (reasoning that a plaintiff bringing a wrongful-death action arising from a motor-vehicle accident does not put the defendant's medical condition "in controversy" by bringing a lawsuit and asserting that the defendant was impaired on the day of the accident).  And Cook's suggestion that he can only prove his claim with this protected information in hand does not make it so.[6]

---

[5] Counsel previously moved to dismiss the defamation action pursuant to Minn. R. Civ. P. 12.02(e), arguing in part that the action is barred by the doctrine of judicial immunity, also known as the judicial-proceedings privilege.  The judicial-proceedings privilege is an absolute privilege that may bar a defamation action when the statement at issue is made "(1) made by a judge, judicial officer, attorney, or witness; (2) made at a judicial or quasi-judicial proceeding; and (3) the statement at issue is relevant to the subject matter of the litigation."  *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 306 (Minn. 2007).  The district court denied counsel's motion to dismiss on this basis and later suggested in its order compelling discovery that waiver of protections would not have been possible had the judicial-proceedings privilege applied.  Given this procedural history and the reasons we grant the extraordinary writ before us, it is neither necessary nor appropriate for us to address the applicability of the judicial-proceedings privilege on the merits.

[6] The district court also stated that the information was discoverable even as work product because Cook has a "substantial need" for this information and cited Minn. R. Prof. Conduct 1.6(b)(8) in support of its order to compel discovery of attorney-client privileged information.  Minnesota Rule of Civil Procedure 26.02(d) permits limited disclosure of work-product-protected "documents and tangible things . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."  Even if a party makes these showings, a district court must still "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."  Minn. R. Civ. P. 26.02(d).  Although the district court referenced the necessary showing of "substantial need," the district court did not analyze whether Cook actually had a "substantial need" for the information or whether Cook was unable to obtain the information another way without "undue hardship."  We note that on appeal, Cook does not argue that he has a substantial need for the information.  We therefore do not consider whether the information Cook sought was discoverable pursuant Rule 26.02(d).

Neither does counsel's assertion of truth as a defense to the defamation action automatically put such confidences at issue.[7] "Truth is a complete defense to a defamation claim." *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 873 n.2 (Minn. 2019). But the assertion that the allegations in the complaint in the personal-injury action are true does not necessarily turn on Trimble's privileged communications with counsel or counsel's knowledge or evaluation of Trimble's claims. And nothing in the record supports a determination that counsel intended to invoke or rely upon protected information in asserting truth as a defense. Thus, the record does not support the district court's conclusion that counsel placed protected information at issue by giving the final complaint to the media before its filing in district court or by asserting truth as a defense to Cook's defamation claim.

---

Relatedly, Minn. R. Prof. Conduct 1.6(b)(8) permits an attorney to disclose client-representation information if they believe disclosure is necessary "to establish a defense in a civil, criminal, or disciplinary proceeding against the lawyer based upon conduct in which the client was involved." We do not read Rule 1.6(b)(8) as authorizing a district court to order an attorney to reveal such information. Additionally, the district court did not cite Rule 1.6(b)(8) in its analysis, and we read its reference to the rule as a mere suggestion of a belief that counsel would not experience professional-responsibility consequences as a result of revealing otherwise protected information. We therefore do not review Rule 1.6(b)(8) as a basis for disclosure and do not comment on the validity of any such suggestion.

[7] Before the district court, Cook also asserted that counsel waived work-product protection by asserting as affirmative defenses that counsel's statements or allegations were not made with "actual malice" or that "allegedly defamatory statements" were made "in good faith." Because the district court in its order did not make any determination regarding whether counsel waived protection on this basis, and our review is limited to whether the district court's order is enforceable as written, we decline to address whether the record would support a conclusion that the assertion of such defenses placed any protected information at issue.

Because the district court abused its discretion when it determined that counsel waived the attorney-client privilege and work-product protection, we grant the writ of prohibition.

**II.    The district court abused its discretion by ordering discovery of information protected by the attorney-client privilege and the work-product doctrine.**

In its order, the district court generally concluded that counsel did not satisfy the burden to establish that the information they sought to protect fell within the scope of the attorney-client privilege or the work-product doctrine and compelled counsel to reveal some information that we conclude, on the record before us, is clearly protected from disclosure. We address these portions of the district court's order because our disposition of the waiver issue does not entirely resolve whether the district court exceeded its authority in the remainder of the order.

**A.    The district court abused its discretion in the broad determination that counsel failed to satisfy the burden to establish the applicability of a privilege or protection.**

Trimble's counsel has the burden to establish the applicability of a privilege or protection. A "party objecting to the production of information has the burden of establishing that the sought-after information is immune from discovery." *Underdahl v. Comm'r of Pub. Safety (In re Comm'r of Pub. Safety)*, 735 N.W.2d 706, 712 (Minn. 2007); *see also* Minn. R. Civ. P. 26.02(f)(1) (requiring a party resisting discovery on the basis that information is privileged or is work product to "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing

12

information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection").

Our task as a reviewing court is complicated by the absence of an individualized evaluation of each question asked or objection made in the district court's order. Instead, the district court summarily concluded that counsel did not satisfy the burden to establish a privilege or protection at all. That broad determination was erroneous because, in response to certain questions posed at the deposition, Cragg and/or his counsel clearly and accurately asserted that a response would require the disclosure of information protected from discovery. For example, Cragg was asked "if you believe it's an important fact that Trimble had never materially feared for her safety . . . prior to November 19th of 2020?" Cragg sought clarification as to whether the question was asking for Cragg's "evaluation of the importance of facts for [Trimble's] claim." Counsel for Cook responded that the question sought such information, which generated an appropriate objection because the response required counsel to reveal work product. *See Energy Pol'y*, 980 N.W.2d at 152 ("The work-product doctrine . . . protects from disclosure an attorney's opinions, conclusions, mental impressions, trial strategy, and legal theories in materials prepared in anticipation of litigation."). Because the question sought the disclosure of work product and the objection specified that a response to the question would require the disclosure of counsel's opinions, conclusions, or mental impressions, counsel met the burden to establish the applicability of the protection. *See* Minn. R. Civ. P. 26.02(f)(1).

Similarly, when Cragg was asked if he planned to assert that he relied on Trimble's representations in preparing the complaint in the personal-injury action, Cragg's attorney

13

objected on the basis that a response to the question would require disclosure of privileged communications. *See Energy Pol'y*, 980 N.W.2d at 152 (defining attorney-client privilege). Because an answer to the question presented could have required Cragg to reveal communications with Trimble in anticipation of litigation, Cragg satisfied the burden to establish the applicability of the protection. *See* Minn. R. Civ. P. 26.02(f)(1). We recognize that Cragg may not have satisfied the burden with respect to every objection or that another form of a question presented may not require counsel to disclose protected information. But because the district court abused its discretion in the broad determination that counsel did not satisfy the burden to establish the applicability of a privilege or protection at all, the district court exceeded its authority to order discovery.

### B. The district court abused its discretion in ordering discovery of protected information.

The district court ultimately ordered Trimble's counsel to answer objected-to deposition questions, including questions seeking the factual basis for Trimble's $13.3 million settlement demand, communications between attorney and client regarding media strategy and public relations, and information related to counsel's investigation, evaluation, and knowledge of facts underlying the personal-injury action and allegedly defamatory statements up to and including the time at which counsel communicated with the media in November 2021.[8] The questions fell into three general categories: (1) questions seeking

---

[8] We note that the scope of the district court's order extends to discovery yet to have occurred at the time of the order. To the extent that the district court prospectively compelled discovery that Cook had not yet requested and counsel had not yet declined to disclose, the order was advisory and premature. *See* Minn. R. Civ. P. 37.01(b)(2) (permitting a party to move to compel a discovery response where a party fails to answer

the factual basis of assertions; (2) yes-or-no questions regarding the nature of counsel's communications with Trimble or work performed by counsel; and (3) questions asking about counsel's communications, strategies, or impressions. We address each category in turn.

### 1. Factual Basis

The district court broadly ordered discovery regarding the factual basis for certain things, including the $13.3 million settlement demand, concluding that such information was not privileged or protected. Minnesota law specifically recognizes "a distinction between the communication itself, which is privileged, and the facts communicated therein, which are not." *Kobluk*, 574 N.W.2d at 443. The district court acknowledged the distinction between facts that may have formed the basis of claims or the settlement demand and communications between client and counsel regarding those facts, but the district court did not account for this distinction when ordering discovery.

At the deposition, Cragg's attorney and Cragg both repeatedly invoked this recognized distinction in asserting the application of the privilege, specifically objecting to or declining to answer questions that would require the disclosure of communications between attorney and client (i.e., privileged information) or work product. For example, Cragg was asked a series of questions about what happened at Cook's home on the day of the altercation giving rise to the personal-injury action. Cragg responded that he had no personal knowledge of those facts, that the facts he was permitted to discuss were contained

a question or interrogatory, make a designation, produce documents, or respond to an inspection).

15

in publicly available documents, and that because Trimble did not waive her privilege, he could only testify to those publicly available facts so as not to reveal information learned during confidential client communications. Cragg was also asked a series of questions about Trimble's alleged gun ownership, possession, and use. Cragg again limited his responses to publicly available information so as not to reveal privileged information learned during confidential client communications. Consistent with the rule set forth in *Kobluk*, counsel appropriately limited his responses to avoid disclosure of privileged or protected information.

Likewise, certain questions posed to Cragg sought to discover more than the factual basis for claims, assertions, or the settlement demand. For example, Cragg was asked, "The demand that you made for $13.3 million, what was the *basis* of that number?" and "So as you sit here today, you're not willing to testify *why you* made a $13.3 million demand to Mr. Cook?" (Emphasis added.) Because Cragg indicated that complete responses to these questions would require him to disclose litigation strategy, mental impressions, or legal analysis of claims, counsel met the burden to show that the information was protected from disclosure as work product. *See Energy Pol'y*, 980 N.W.2d at 152 (defining work product). To the extent that the district court's order compelled the discovery of such privileged or protected information, the district court exceeded its authority to order discovery.

2.    **Yes-or-No Questions**

Counsel was asked a series of questions regarding whether a communication between attorney and client occurred at all or whether work product was generated. Most

16

of these questions sought the limited answer of "yes" or "no." For example, counsel was asked, "Prior to speaking to [the Star Tribune reporter] on . . . November 9th [2021] . . . , did you provide any legal advice to Ms. Trimble about speaking with the press; yes or no?" To the extent the district court's order compelled responses to these questions, we see no abuse of discretion because the questions do not appear to elicit confidential communications between attorney and client or work product. Rather, it appears that the questions are foundational in nature, posed to determine whether the information sought might be subject to protection. *See* 1 Paul R. Rice, *Attorney-Client Privilege in the United States* § 6:22 (2022 ed.) ("The fact that communications existed, as well as the general subject of those conversations between the attorney and client or nature of the work performed by the attorney, is not protected by the privilege.").[9]

At oral argument before this court, counsel for Trimble's counsel agreed that answers to these yes-or-no questions generally did not implicate privileged or protected information. And because the party asserting the privilege or protection made no record that responding to such foundational questions would invade client confidences or reveal work product, we see no abuse of discretion in the district court ordering answers to these questions. *See id.* (stating that existence and general subject of such communications "must be revealed in order for there to be an independent determination by the court that the nature of that work was legal" (quotation omitted)); *see also Underdahl*, 735 N.W.2d at 712 (explaining that a "party objecting to the production of information has the burden of

---

[9] The supreme court cited to this treatise in *Polaris*, 967 N.W.2d at 410.

17

establishing that the sought-after information is immune from discovery"); Minn. R. Civ. P. 26.02(f)(1) (requiring a party resisting discovery to describe the nature of the communications not produced or disclosed "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection").

### 3. Communications, Strategies, Impressions, or Opinions

The district court's order also compelled counsel to answer questions that may require disclosure of communications between counsel and Trimble and counsel's strategies, impressions, or opinions. Cragg was asked, for example, about his decisions as to what to include in or omit from the complaint. We reiterate that, to the extent that the district court compelled answers that required disclosure of information protected by the attorney-client privilege or the work-product doctrine, the district court abused its discretion and exceeded its authority to order discovery.

In particular, the district court concluded that none of the communications between counsel and Trimble that may have touched on media strategy or public relations were privileged because such communications were not "necessary or appropriately related to legal services." In reaching this general conclusion, the district court focused on the scope of representation set forth in a retainer agreement and broadly asserted that "[c]ourts have recognized that public relations advice, even within the context of a lawsuit, is not legal

18

advice."[10]  This analysis and conclusion deviates from the framework set forth under established Minnesota law to determine the application of an evidentiary protection.

Minnesota courts conduct "a fact-intensive inquiry" to evaluate the individual communication at issue in determining the application of the privilege. *Energy Pol'y*, 980 N.W.2d at 156. The "threshold inquiry" is "whether the [evidence] embodies a communication in which legal advice is sought or rendered." *Polaris*, 967 N.W.2d at 406 (quotation omitted). As "a general matter, attorneys provide legal advice when they draw on their legal training and apply legal principles to the specific circumstances of their client." *Id.* at 410. The district court did not engage in this fact-intensive inquiry to determine whether the substance of any individual communication—which may have included discussions about media strategy or public relations—involved legal advice. We agree with the district court that a privilege may not apply to a communication between attorney and client regarding media strategy or public relations unrelated to the application of legal principles or that do not draw on counsel's legal training and expertise. But to the extent counsel met the burden to show that a communication involved legal advice, the district court's sweeping order compelling disclosure of all such communications exceeds it authority to order discovery.

---

[10]  The district court specifically invoked the "predominant purpose test" adopted in *Polaris*. 967 N.W.2d at 407-08. In *Polaris*, the supreme court held that "when *a document* contains both legal advice and business advice, for the attorney-client privilege to apply to the document in its entirety, the predominant purpose of the communication must be legal advice." *Id.* at 408 (emphasis added). We do not decide whether the predominant-purpose test applies in determining the application of the privilege to an undocumented communication.

## DECISION

We hold that disclosure of the final civil complaint before it is served or filed in district court does not result in a waiver of the attorney-client privilege or work-product protection. The district court thus abused its discretion by determining that counsel waived the attorney-client privilege and work-product protection by giving to a newspaper reporter a copy of the final complaint before it was served or filed in district court. The district court also abused its discretion because it compelled counsel to answer questions that would reveal information protected by the attorney-client privilege and/or work-product doctrine, even when counsel met the burden of demonstrating that a privilege or protection applied. The district court therefore exceeded its authority to order discovery, and we grant the writ of prohibition.[11]

**Writ granted.**

---

[11] In granting the writ, we take no position on whether all of the communications subject to the motion to compel are in fact privileged or protected, or whether there may be some other basis to conclude that a protection has been waived.